In re Samuel BRAEN, Jr., Debtor.

Nicholas LAGANELLA and P.T. & L. Construction Co., Inc., Plaintiffs–Appellees,

v.

Samuel BRAEN, Jr., Defendant–Appellant.

Civ. A. No. 87–3473.

United States District Court, D. New Jersey.

Nov. 18, 1988.

As Amended Jan. 24, 1989.

H. Curtis Meanor, Podvey, Sachs, Meanor & Catenacci, Newark, N.J., for defendant-appellant.

Herbert C. Klein, Mary Ann Walker Collins, Klein, Chapman, Greenberg, Henkoff & Siegel, Clifton, N.J., for plaintiffs-appellees.

## OPINION

WOLIN, District Judge.

Currently before the Court is an appeal from an order of the Bankruptcy Court finding appellant's debt to the appellee nondischargeable under Section 523(a)(6) of the Federal Bankruptcy Code, 87 B.R. 841. For the reasons set forth below, the decision of the Bankruptcy Court is reversed and the case is remanded back to the Bankruptcy Court for further proceedings consistent with this opinion.

## I. BACKGROUND

On February 25, 1980, plaintiffs-appellees Nicholas Laganella ("Laganella") and P.T. & L. Construction Co., Inc. ("PT & L"), filed a complaint for malicious prosecution in the Superior Court of the State of New Jersey, wherein debtor-appellant Samuel Braen, Jr. ("Braen Jr."), was one of several defendants. The complaint stated that sometime prior to 1975 Braen Jr. did maliciously and without probable cause instigate and proximately cause Laganella to be indicted in certain state criminal proceedings.

The malicious prosecution suit charged Braen Jr. with giving false information to the Division of Criminal Justice of the State of New Jersey that resulted in indictments against Laganella and PT & L. These indictments charged Laganella and PT & L with involvement in a bid-rigging conspiracy entered into with Braen Jr. Braen Jr. furnished the information regarding Laganella while he, himself, was under indictment for shortweighting of asphalt supplied in connection with the paving of the Palisades Interstate Parkway. Apparently, Braen Jr. had been promised that the indictment against him would be dropped if he furnished information about corruption

in the field of road construction and road paving jobs in northern New Jersey.

Laganella and PT & L were subsequently acquitted of the criminal charges by a jury in 1979. However, prior to this acquittal, a hearing examiner for the New Jersey Department of Transportation found that in view of "all the relevant evidence, the inconsistencies of their testimony and the interest or lack of interest of a witness in the outcome of the hearing and from all these circumstances ... I have determined that the weight or preponderance of the evidence demonstrates the lack of moral integrity on the part of PT & L and Nicholas Laganella." Based on these findings, the examiner recommended and the Commissioner entered an order continuing the suspension of PT & L and Laganella from the list of qualified bidders entitled to do work for the state. The suspension, which began when Laganella was first indicted, was ordered to continue for a period of five years from the original December 27, 1974, date of suspension.

Following the acquittal on the criminal charges, Laganella and PT & L brought suit on February 25, 1980 against Braen Jr. and others, alleging malicious prosecution and tortious interference with economic relations, as well as conspiracy with respect to both torts. After the plaintiffs and defendants had presented their case to the jury, the trial judge charged the jury solely on the issue of malicious prosecution. The charge, in pertinent part, stated:

> [I]f you find that the defendant did not have an honest belief that the plaintiff was guilty, and that the charges were thereby falsely brought, you must conclude that there was no reasonable or probable cause. The plaintiff must establish that the defendant was activated by malicious motive in prosecuting the criminal or moving the criminal proceedings, giving that information which brought about the criminal proceedings against the plaintiff. Not malice in the sense that the word is sometimes used, the kind of malice I speak of means the

intention or doing of a wrongful or unlawful act which an ordinary cautious man would realize that under the circumstances damage would result to one's person or one's property. The element may inferred from a lack of reasonable or probable cause.

\*    \*    \*    \*    \*    \*

> I think it may be proper if I again define for you the term malice. Malice, in this connection, means the intention [sic] commission of a wrongful act without just cause or excuse, but malice in the law means nothing more than an intentional doing of a wrongful act without justification or excuse. What is a wrongful act? The meaning of that definition, any act which in the ordinary course would infringe upon the rights of another to his damage is wrongful, except if it be done in the exercise of an equal or superior way. Malice must be inferred from a lack of probable cause.[1]

After being instructed by the judge, the jury was given a questionnaire to aid in its deliberations. In this questionnaire the jury was asked, *inter alia,* the following questions:

> 1. Do you find that plaintiff has proved by a preponderance of the evidence that the named defendants acted to bring about or were responsible for the institution of underlying criminal proceeding [sic] against plaintiff Nicholas Laganella.
> 2. Do you find that plaintiff has proved by a preponderance of the evidence that there was a lack of reasonable or probable cause for the criminal prosecution.
> 3. Do you find that plaintiff has proved by a preponderance of the evidence that the defendant/defendants was/were activated by a malicious motive in prosecuting the criminal complaint against plaintiff.

The jury answered these questions in the affirmative and rendered a verdict in favor of the plaintiffs. Laganella and PT & L were awarded compensatory damages of $10,000, 175.00 and punitive damages of

---

**1.** The trial transcript was later changed to read: "Malice *may* be inferred from a lack of probable cause." The Court finds the discrepancy to be of no significance.

$150,000.00. On October 9, 1985, the Appellate Division of the State of New Jersey affirmed the jury verdict in favor of Laganella and PT & L against Braen Jr. On September 8, 1986, a petition for certification filed by Braen Jr. was denied by the New Jersey Supreme Court.

On October 8, 1986, Braen Jr. filed a voluntary Chapter 11 bankruptcy petition before the U.S. Bankruptcy Court, District of New Jersey. Laganella brought an action to have the judgment found nondischargeable and moved for summary judgment, arguing that the judgment Braen Jr. owes to him is non-dischargeable under the Bankruptcy Code, 11 U.S.C. § 523(a)(6).[2] In an opinion dated June 8, 1988, Judge Tuohey of the Bankruptcy Court found that Braen Jr.'s debt to Laganella was nondischargeable under § 523(a)(6). Judge Tuohey gave collateral estoppel effect to the state court malicious prosecution verdict and found that Braen Jr. was thus precluded by the state court verdict from contesting the issue of whether Braen Jr. had willfully and maliciously injured Laganella. It is this opinion and, specifically, the decision of the Bankruptcy Judge to give collateral estoppel effect to the state court verdict, that Braen Jr. now appeals to this court.

## II.  DISCUSSION

The debtor, Braen Jr., appeals from the Bankruptcy Court's opinion and order, contending that the Bankruptcy Court erred in applying collateral estoppel effect to the state court jury verdict on appellee Laganella's malicious prosecution claim. Sitting as an appellate tribunal, this Court's authority is limited to setting aside fact findings which are clearly erroneous. Bankruptcy Rule 8013. The Court does, however, enjoy plenary review of the Bankruptcy Court's resolution of legal questions. *Universal Minerals, Inc. v. C.A. Hughes,* 669 F.2d 98, 103 (3d Cir.1981); *Matter of Elin,* 20 B.R. 1012, 1015 (D.N.J.1982).

The Bankruptcy Court's decision to apply collateral estoppel was a resolution of a legal question and is now properly subject to review. To facilitate that review, the Court will analyze the Bankruptcy Court's decision in conjunction with the three main points the appellant raises on appeal: (1) The proper standard of proof for establishing a debt as non-dischargeable under the Bankruptcy Code is "clear and convincing", thus preventing a Bankruptcy Court from affording collateral estoppel effect to a state court judgment based on a "preponderance of the evidence" standard; (2) The state court verdict for malicious prosecution was based on a jury charge which could support a judgment based on mere negligence. Thus the Bankruptcy Court erred in applying collateral estoppel effect to the verdict on the issue of whether Braen Jr. willfully and maliciously injured Laganella within the meaning of § 523(a)(6); (3) The Bankruptcy Court erred in applying collateral estoppel effect to the state court verdict without first examining the fairness of the state court proceeding, including the competence of counsel, the health of the defendant Braen Jr. and the possibility that significant evidence was not included in the trial.

### A. *The Standard of Proof in Dischargeability Cases.*

The Third Circuit, in *Matter of Ross,* 602 F.2d 604 (3d Cir.1979), held that collateral estoppel could be used by bankruptcy courts to preclude relitigation of an issue previously litigated in another court. The court in *Ross* found preclusion would be proper if the bankruptcy court found that:

> (1) The issue sought to be precluded [was] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it [was] determined by a valid and final judgment; and (4) the determination [was] essential to the prior judgment.

*Id.* at 607–08.

Inherent in the first factor mentioned in *Ross* is the general rule that collateral es-

---

**2.**  The section provides:

§ 623(a) A discharge under section 727, 1141 or 1328(b) of this title does not discharge an individual debtor from any debt.—

\* \* \* \* \* \*

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

toppel cannot apply when the standard of proof in a previously adjudicated matter is less stringent than that in a later proceeding. 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure: Jurisdiction*, § 4422 (1981); *United States v. Rylander*, 714 F.2d 996, 1002 (9th Cir.1983) ("It is an elementary principal of issue preclusion that it may only be asserted where the burden of proof as to that issue is no greater than it was in the prior proceeding where the issue was decided.").

In order to review whether the bankruptcy judge properly applied collateral estoppel to the state court verdict in this case, it is necessary to compare the standards of proof required in the state court proceeding and the Bankruptcy Court discharge proceeding.

The state court malicious prosecution trial was governed by a preponderance of the evidence standard. What is disputed is the proper evidentiary standard for a bankruptcy discharge proceeding. The appellant-debtor Braen Jr. argues that bankruptcy discharge cases are governed by a "clear and convincing" evidence standard with the burden on the creditor to prove why the disputed debt should not be discharged. Appellee argues that the Bankruptcy Court correctly determined that bankruptcy discharge proceedings are covered by a preponderance of the evidence standard, and thus properly gave collateral estoppel effect to the state court verdict. The Court agrees with the appellant.

While the Third Circuit has not addressed the question, at least five circuits have found that a bankruptcy discharge proceeding is governed by a clear and convincing standard. See *Chrysler Credit Corp. v. Rebhan*, 842 F.2d 1257, 1262 (11th Cir.1988) ("There is no question but that the party seeking to except a debt from discharge must prove the willfulness and maliciousness of the act by clear and convincing evidence."); *In re Dougherty*, 84 B.R. 653 (9th Cir. BAP 1988); *In re Van Horne*, 823 F.2d 1285, 1287 (8th Cir.1987) ("Creditors bear the burden of proof, Bank. R. 4005, and must prove each element of their crime by clear and convincing evidence."); *In re Kimzey*, 761 F.2d 421 (7th Cir.1985); *In re Martin*, 761 F.2d 1163 (6th Cir.1985). See also Ferriell, *The Preclusive Effect of State Court Decisions in Bankruptcy*, 58 Am.Bankr.L.J. 349, 362 n. 84 1983) ("The overwhelming majority of bankruptcy courts apply a 'clear and convincing' standard of proof in nondischargeability proceedings.").

In response to the above authority, appellee and the bankruptcy court below rely on *Combs v. Richardson*, 838 F.2d 112 (4th Cir.1988) and *In re Daboul*, 85 B.R. 197 (Bkrtcy.D.Mass.1988) for the proposition that this bankruptcy discharge proceeding is governed by a preponderance of the evidence standard. In *Combs*, the court did not address the above circuit court decisions to the contrary, but found that:

> The policies of the Bankruptcy Code are best effectuated by requiring that creditors prove by a preponderance of the evidence the willfulness and maliciousness of the debtors' acts.

*Combs*, 838 F.2d at 116. In *Daboul*, the Bankruptcy Court apparently construed *Combs* to support the view that bankruptcy courts should look to state law for guidance on what standard of proof to apply. *Daboul*, 85 B.R. at 200. The Bankruptcy Court below, in turn, relies on *Daboul* and *Combs* to support its finding that the current bankruptcy proceeding is governed by New Jersey's preponderance of the evidence standard for malicious prosecution cases. *Laganella v. Braen*, 87 B.R. 841, 845 (Bkrtcy.D.N.J.1988). It is this finding of law that must now be reversed.

Federal control over bankruptcy matters derives from the constitutional mandate of Article I, Section 8, Cl. 4 to establish "uniform laws on the subject of bankruptcies throughout the United States." As part of this mandate, Congress has enacted Section 523(c), Title 11 U.S.C., which grants the bankruptcy court exclusive jurisdiction over exceptions to discharge based on debts arising from the debtor's fraud, false representations or responsibility for willful and malicious injuries. *Brown v. Felsen*, 442 U.S. 127, 135–36, 99 S.Ct. 2205, 2211, 60 L.Ed.2d 767 (1979). Clearly, an integral

part of any dischargeability proceeding is the standard of proof required for a creditor to demonstrate a particular debt is non-dischargeable. While the Bankruptcy Code does not provide an evidentiary standard, the clear majority of federal courts, by adopting a clear and convincing standard for dischargeability proceedings, have created persuasive federal common law on the subject which this Court deems proper to follow as the best means of effectuating the "fresh start" policy of federal bankruptcy law.

The Bankruptcy Court, relying on *Daboul*, seizes on the fact that the many circuit courts which have found that a clear and convincing standard applies in discharge proceedings have not done so in the context of issue preclusion involving state court judgments. In these cases, the Bankruptcy Court found that the state standard of proof should apply in the discharge proceeding, which, of course, would justify applying collateral estoppel effect to the state judgment, itself. For this proposition, the court below relies on *Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). However, *Butner* is concerned with the analysis of *property interests* in bankruptcy proceedings when those interests are not covered under federal law. In contrast, the question of what standard of proof applies in a congressionally mandated discharge proceeding, which is under the *exclusive* domain of the federal bankruptcy courts, goes to the essence of the discharge proceeding itself. The fact that the Bankruptcy Code fails to set out an evidentiary standard does not mean that the standard is akin to a property interest which can be defined under state law. The Bankruptcy Court's reliance on *Butner* is thus inapposite. Moreover, it would be an anomalous result for the standard of proof in discharge proceedings to depend on whether the proceeding concerned the collateral estoppel effect of a state court judgment or instead involved an independent determination of dischargeability by the Bankruptcy Court.

Therefore, in the absence of a clear congressional, Supreme Court or Third Circuit determination to the contrary, this Court finds that the weight of federal authority supports the view that a clear and convincing evidentiary standard is required in bankruptcy discharge proceedings. Given this standard, the Bankruptcy Court erred when it afforded collateral estoppel effect to the state court malicious prosecution verdict, which was based on a preponderance of the evidence standard. On remand, the Bankruptcy Court must conduct an independent hearing in which the appellee must prove by clear and convincing evidence that the appellant willfully and maliciously injured him.

B.  *The Malicious Prosecution Verdict As Support For a Finding of Willful and Malicious Injury Under Section 523(a)(6) of the Bankruptcy Code.*

■ Section 523(a)(6) of the Bankruptcy Code provides that an individual debtor will not be granted a discharge from any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." While "willful and malicious injury" can be subject to somewhat different interpretations, it is clear from the legislative history of the section that the language was not intended to prevent the discharge of debts for either negligently or recklessly caused injuries.

> Paragraph (6) [5] excepts debts for willful and malicious injury by the debtor to another person or to the property of another person. Under this paragraph, "willful" means deliberate or intention. To the extent that *Tinker v. Coldwell [Colwell],* 193 U.S. 473 [1904] (1902) [24 S.Ct. 505, 48 L.Ed. 754, 11 Am.Bankr. Rep. 568] held that a looser standard is intended, and to the extent that other cases have relied on *Tinker* to apply a "reckless disregard standard, they are overruled."

S.Rep. No. 95–989, 95th Cong., 2d Sess. 79 (1978); H.R.Rep. No. 95–595, 95th Cong. 1st Sess. 365 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5865, 6320; both reprinted in 3 *Collier on Bankruptcy* (15th ed. 1985).

Appellee argues that a malicious prosecution case "by definition" is an intentional

tort. Appellees' Brief in Opposition, p. 19. The Bankruptcy Court, relying on a New Jersey court's definition of "malice" as "the intentional commission of a wrongful act without just cause or excuse," *Laganella v. Braen, Jr.*, 87 B.R. at 846 (quoting *Mayflower Industries v. Thor Corp.*, 15 N.J.Super. 139, 152, 83 A.2d 246 (Ch.Div. 1951)), found that the New Jersey tort of malicious prosecution "comports with the definition in the United States Bankruptcy Code as set forth in Section 523(a)(6) which defines certain actions as nondischargeable." *Laganella v. Braen*, 87 B.R. at 846.

The Court finds that, while the above definition of malice relied upon by the Bankruptcy Court was contained in the jury charge in the state case, the entire jury charge contained several references to "reasonable" and "probable" cause. See *supra* at pp. 37–38. The State of New Jersey is, of course, free to define the tort of malicious prosecution as either a negligent or intentional tort, and can use the term "lack of reasonable cause" in establishing a standard for liability. However, in the context of bankruptcy discharges, only an intentional injury will suffice to prevent discharge of the debt under § 523(a)(6).

The critical element in the jury charge and questionnaire is the definition of the term "malice". However, malice is defined in the charge in two different ways. At one point the judge charged: "Malice ... means the intention [sic] commission of a wrongful act without just cause or excuse," but the jury was also instructed: "Malice may be inferred from a lack of probable cause." See *supra* at p. 37.

■ "Probable" or "reasonable" cause is the language of negligence, and while it is possible or even probable the jury found that Braen Jr. committed an intentional act, the charge did permit the jury to find Braen Jr. liable for negligently or perhaps recklessly supplying false information to the authorities, leading to Laganella's indictment. In *Matter of Ross*, 602 F.2d 604, 607 (3d Cir.1979), one condition for applying collateral estoppel effect to a judgment is that: "The determination [of the issue] must have been essential to the prior judgment." In the case at bar, it was not essential for the jury in the state case to have found Braen Jr. acted intentionally because they could have found him liable for acting "without reasonable or probable cause." Thus, the Bankruptcy Court erred when it applied collateral estoppel effect to the state verdict on the issue of whether Braen Jr. acted willfully and maliciously in the context of a § 523(a)(6) discharge proceeding. See *In re Held*, 734 F.2d 628, 630 (11th Cir.1984); *Kauffman v. Moss*, 420 F.2d 1270, 1274 (3d Cir.), *cert. denied*, 400 U.S. 846, 91 S.Ct. 93, 27 L.Ed.2d 84 (1970); *In the Matter of Rowland*, (1988) [available on WESTLAW, 1988 WL 73431]. On remand, the Bankruptcy Court must independently determine whether Braen Jr. acted willfully and maliciously toward the appellee.[3]

### C. Consideration of the Underlying Fairness of the State Court Proceeding.

■ Because this Court has already determined that the Bankruptcy Court may not apply collateral estoppel effect to the state court verdict, it is not necessary to discuss in detail the extent to which the Bankruptcy Court may have erred by refusing to consider the underlying fairness of the state court proceeding before applying collateral estoppel effect to it. Suffice it to say that in *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979), the Supreme Court stated that collateral estoppel should not be applied to a judgment if "the application of

---

**3.** The appellant has also raised the issue of whether an "intentional" act under § 523(a)(6) requires an "intent to harm" or simply an injury caused by an intentional act. The Court agrees with the recent holding by Judge Sarokin in *Matter of Rowland*, (D.N.J.1988) that "willful and malicious injury" does not require proof of intent to harm. However, while this Court adopts the broader view of what constitutes an intentional act under § 523(a)(6), the Bankruptcy Court should keep in mind on remand that, in the context of the malicious prosecution judgment, a finding that Braen Jr. either negligently or recklessly supplied false information to authorities cannot support a denial of discharge under § 523(a)(6).

offensive collateral estoppel would be unfair to a defendant." 439 U.S. at 331, 99 S.Ct. at 652. Moreover, in *Matter of Ross,* 602 F.2d at 608, the Third Circuit stated that a bankruptcy judge should apply collateral estoppel only "after a careful review of the record of the prior case, a hearing at which the parties have the opportunity to offer evidence, and the making of findings of fact and conclusions of law."

In the case at bar, it does not appear that the bankruptcy judge held a hearing or accepted evidence on matters related to the underlying fairness of the state court proceeding. Appellant cites poor health, incompetent counsel and the fact that relevant evidence was not considered, as factors tending to make it unfair for the Bankruptcy Court to apply collateral estoppel effect to the state court judgment. Of these factors, the question of new evidence, in particular, should have been considered by the Bankruptcy Court before applying collateral estoppel. *In re Georgia Granite Co., Inc.,* 86 B.R. 733, 739 (Bkrtcy.N.D.Ga. 1988) ("Newly discovered evidence may preclude application of the collateral estoppel doctrine if the party against whom collateral estoppel is asserted was deprived of crucial evidence in the prior litigation without fault of his own.").[4]

Therefore, the Bankruptcy Court erred in applying collateral estoppel effect to the state court verdict without first examining the underlying fairness of that proceeding.

## III. CONCLUSION

For the reasons set forth above, the decision of the Bankruptcy Court to apply collateral estoppel effect to the state court judgment is reversed, and the case is remanded back to the Bankruptcy Court for further proceedings consistent with this opinion.

An appropriate order is attached.

[4] The decision by the New Jersey Secretary of Transportation, after a full hearing, to suspend Laganella from doing work for the state appears particularly relevant to the question of discharge, even though this decision was not introduced into evidence at the state trial. The Court is also troubled by the apparent failure of the Bankruptcy Court to consider the affidavits of Kathy Flicker and Michael Bozza, the state prosecutors who were responsible for bringing charges against Laganella.