In the Matter of Gerald J. ROSS, also known as Jerry Ross, Bankrupt.

Gerald J. Ross, Appellant.

No. 78–2309.

United States Court of Appeals, Third Circuit.

Argued June 6, 1979.

Decided July 26, 1979.

Lester H. Novack (argued), Cohen & Novack, Philadelphia, Pa., for appellant.

James D. Crawford, David S. Hope, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa. and Mark L. Austrian (argued), Christine Beck, Davis, Polk & Wardwell, New York City, for appellee, Metro-Goldwyn-Mayer, Inc.

Before ALDISERT, VAN DUSEN and GIBBONS, Circuit Judges.

## OPINION OF THE COURT

VAN DUSEN, Senior Circuit Judge.

This appeal challenges a district court decision which reversed a bankruptcy judge's order and granted summary judgment in favor of Metro-Goldwyn-Mayer, Inc. (MGM). The final district court order held that a debt of Gerald J. Ross to MGM was not dischargeable in bankruptcy, pursuant to § 17(a)(2) of the Bankruptcy Act, 11 U.S.C. § 35(a)(2), and that it would be improper to litigate this dischargeability issue since a prior decision of the United States Court of Appeals for the Second Circuit[1] involving the same parties was dispositive of that issue.[2] This court reverses the deci-

---

1. See *Metro-Goldwyn-Mayer, Inc. v. Ross*, 509 F.2d 930 (2d Cir. 1975), *reversing Metro-Goldwyn-Mayer, Inc. v. Ross*, 363 F.Supp. 23 (S.D.N.Y.1973).

2. The July 31, 1978, final district court order contained, *inter alia*, this language (102a–103a), which we reverse:

 "2. The standard for a violation of Section 10b and Rule 10b–5, in the Second Circuit at the time of the decision of the Court of Appeals in this case, i. e. in *Metro-Goldwyn-Mayer, Inc. v. Jerry Ross et al.* and *Heritage Records, Inc. et al. v. Metro-Goldwyn-Mayer, Inc.*, 509 F.2d 930 (2d Cir. 1975) rev'g 363 F.Supp. 23 (SDNY 1973), were the same as the current standard for non-dischargeability under Section 17a(2).[2]

 "2. *Shemtob v. Shearson, Hammill & Co., Inc.*, 448 F.2d 442, 445 (2nd Cir. 1971);

 *Lanza v. Drexel & Co.*, 479 F.2d 1277, 1305 (2nd Cir. 1973).

 "3. The following are non-dischargeable debts owed by the Bankrupt to MGM:

 "a. the sum of $303,832.87, which was entered as a judgment against the Bankrupt and in favor of MGM by the United States District Court for the Southern District of New York (amended judgment of Charles E. Stewart, Jr., District Judge, entered April 30, 1975, in 71 Civ. 1728, 2653 (CES)).

 "b. the sum of $26,001.60, representing the pro-rated settlement amount, attributable to the Bankrupt's 5,417 shares of MGM stock pledged to Irving Trust Company and returned by it to MGM under the terms of a settlement agreement between Irving Trust Company and MGM (order of Charles E. Stewart, Jr., District Judge, dated May 23, 1977, in 71 Civ. 1728, 2653 (CES)).

sion of the district court and remands, so that the bankruptcy court may review the entire record of the earlier action and determine, in light of principles of collateral estoppel,[3] *Brown v. Felsen*, —— U.S. ——, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979), and this opinion, whether the factual record supports the application of the doctrine of collateral estoppel to preclude litigation of this dischargeability question in the bankruptcy court.

The debt found not to be dischargeable by the district court arose out of contract litigation between the parties in the Southern District of New York. MGM brought suit in the United States District Court for the Southern District of New York to rescind its contract with Gerald and Arthur Ross ("Ross brothers").[4] The grounds for this suit included contentions that the Ross brothers had made misleading statements and omitted to disclose material facts in violation of § 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder.[5] The Ross companies counterclaimed and brought suit against MGM for breach of

"It is hereby ORDERED that the order of the Bankruptcy Judge with respect to the $303,832.87 and $26,001.60 portions of the judgment against the Bankrupt be reversed and that MGM be granted summary judgment on its claim that these debts be adjudged non-dischargeable under Section 17a(2) of the Bankruptcy Act, . . . .." In explanation of this part of its order, the district court used this language in a bench opinion (97a–98a):

"I find myself in agreement with the position of Metro-Goldwyn-Mayer, that Judge King erred as a matter of law in holding that a judgment resulting from a violation of Section 10(b)5 of the Securities and Exchange Act of 1934 and Rule 10(b)(5) promulgated thereunder does not meet the standard for nondischargeability of a debt under Section 17(a)(2) of the Bankruptcy Act. 11 USC, Section 35(a)(2).

"I also agree that Judge King erred as a matter of law by holding that the bankrupt is not bound by a prior judgment where the issue of obtaining money or property by false pretenses or false representations has been fully and fairly litigated and has been found against him.

"I am satisfied that the standard for a violation of Section 10(b) and Rule 10(b)(5) were the same as under Section 17(a)(2) in the Second Circuit at the time of the decision by the Court of Appeals in this case, i. e., in *MGM v. Ross and Heritage Records*, 509 F.2d 930 (2d Cir. 1975) by the citation advanced by MGM of the *Drexel* and *Lanza* case and the *Shemtob* case. It is obvious that the panel in this case, consisting of Judges Smith, Hayes and Mansfield was well aware of *Drexel* and *Lanza* and of *Shemtob* when that panel held the findings of Judge Stewart. That there was a 10(b)(5) violation, that they met a 10(b)(5) violation in terms of the standards enunciated in *Drexel* and *Lanza* and *Shemtob*. And those standards meet the standards for nondischarge under the Bankruptcy Act [as] I have held.

"Messrs. Austrian and Hope in their brief ask me to hold that the bankrupt's conduct as found by the Second Circuit requires nondischargeability under Section 17(a)(2). I suppose it would be more precise to say that the Second Circuit as such makes no findings. Actually what they did was to take the findings of Judge Stewart undisputed in the relevant area and say that under these facts there was 10(b)(5) liability as a matter of law. The findings on the issue are certainly binding on the bankrupt who had an opportunity to fully and fairly litigate."

3. See, for example, Tentative Draft No. 4, Restatement (Second) of Judgments § 68.1(c) (1977) and Reporter's Note; *cf.* Restatement of Judgments § 71 (1942). The bankruptcy court should also consider that the policies of uniformity and protection of debtors behind the grant of exclusive jurisdiction in § 17(c)(2) of the Bankruptcy Act, 11 U.S.C. § 35(c)(2), both suggest that judgments by non-bankruptcy courts should be examined with special care before they are given collateral estoppel effect. We note the use of the words "countervailing statutory policy" in the quotation from *Brown v. Felsen, supra* at note 9 below.

4. Gerald Ross and his brother entered into an April 1970 agreement with MGM involving an exchange of 80% of the stock of companies owned by the Ross brothers for MGM stock.

5. The Ross companies were engaged in the production, manufacture, marketing and distribution of phonograph records and tape recordings. At the time of the agreement, it was the standard industry practice to distribute two or three "free records" for every ten records sold. It was MGM's contention that the Ross companies distributed over 70,000 "free records" above the standard industry practice. It was this alleged non-disclosed fact that formed the basis of MGM's claim.

contract and violation of the federal securities laws.[6]

After a five-week trial in the Southern District of New York, the court concluded that MGM should have been aware of the 70,000 free records from the documents it reviewed. The court found that MGM had breached its agreement and awarded damages to the Ross brothers. See *Metro-Goldwyn-Mayer, Inc. v. Ross*, 363 F.Supp. 23 (S.D.N.Y.1973).

The United States Court of Appeals for the Second Circuit reversed and held that the Ross brothers had violated § 10(b) by failing to disclose the 70,000 records. An order on remand was entered directing the Ross brothers to return the MGM stock and pay MGM $303,832. as consequential damages (see 4/30/75 Southern District of New York order at 62a).

On August 6, 1975, Gerald Ross filed a voluntary petition in bankruptcy in the Eastern District of Pennsylvania. MGM claimed that the debt arising out of the New York suit was not dischargeable in bankruptcy under § 17(a)(2) of the Bankruptcy Act, 11 U.S.C. § 35(a)(2), which provides that liabilities for obtaining money or property by false pretenses or false representations are not dischargeable in bankruptcy. MGM sought summary judgment based on its contention that the prior judgment forecloses the relitigation of issues litigated in that proceeding and that the issue of obtaining property by false representations or pretenses was already decided in the § 10(b) suit.

The bankruptcy judge denied the motion and set the matter for trial.[7] The district court reversed the decision of the bankruptcy court. The district judge concluded that the standard for violation of § 10(b) and Rule 10b–5 in the Second Circuit at the time of the decision is the same as under § 17(a)(2) and that summary judgment was appropriate in this case as the parties are bound by the prior judgment, which is dispositive of the issue.

■ Contrary to the position of certain commentators,[8] *Brown v. Felsen, supra* at note 10,[9] decided after the July 1978 order subject to this appeal, indicates that the doctrine of collateral estoppel may be applicable to a dischargeability determination by the bankruptcy court. In order for the doctrine to bar relitigation of the discharge-

**6.** The basis for the countersuit was MGM's failure to provide the Ross companies with financing, as required by the sales agreement.

**7.** The bankruptcy judge stated:
"[T]his court finds that the judgments of the United States Circuit Court of Appeals for the Second Circuit and the United States District Court for the Southern District of New York in Metro-Goldwyn-Mayer, Inc. v. Jerry Ross and Arthur B. Ross (71 Civ. 1728) and Heritage Records, Inc., et al. v. Metro-Goldwyn-Mayer, Inc. (71 Civ. 2653) pertaining to the parties in the instant case, do not contain findings of fraud necessary under Section 17(a)2 of the Bankruptcy Act to prevent discharge of the Bankrupt from the debt created by the aforesaid judgments."
(70a)

**8.** 1A Collier on Bankruptcy § 17.16[6] (14th ed. 1978); Countryman, *The New Dischargeability Law*, 45 Am.Bankr.L.J. 1 (1971).

**9.** "[10] This case concerns res judicata only, and not the narrower principle of collateral estoppel. . . . If, in the course of adjudicating a state-law question, a state court should determine factual issues using standards identical to those of § 17, then collateral estoppel, in the absence of countervailing statutory policy, would bar relitigation of those issues in the bankruptcy court.
"Because respondent does not contend that the state litigation actually and necessarily decided either fraud or any other question against petitioner, we need not and therefore do not decide whether a bankruptcy court adjudicating a § 17 question should give collateral estoppel effect to a prior state judgment. In another context the Court has held that a bankruptcy court should give collateral estoppel effect to a prior decision. *Heiser v. Woodruff*, 327 U.S. 726, 736, 66 S.Ct. 853, 90 L.Ed. 970 (1946). The 1970 amendments to the Bankruptcy Act, however, have been interpreted by some commentators to permit a contrary result. See 1A Collier on Bankruptcy § 17.16[6], at 1650.2 (14th ed. 1978); Countryman, The New Dischargeability Law, 45 Am.Bankr.L.J. 1, 49–50 (1971). But see 1 D. Cowans, Bankruptcy Law & Practice § 253 (1978)."
*Brown v. Felsen*, —— U.S. ——, ——, 99 S.Ct. 2205, 2213, 60 L.Ed.2d 767 (1979).

ability issue, the bankruptcy court would have to find that:

" . . . (1) the issue sought to be precluded must be the same as that involved in the prior action; (2) that issue must have been actually litigated; (3) it must have been determined by a valid and final judgment; and (4) the determination must have been essential to the prior judgment."

*Haize v. Hanover Ins. Co.*, 536 F.2d 576, 579 (3d Cir. 1976). See also *Matter of McMillan*, 579 F.2d 289 (3d Cir. 1978).

 A determination of whether the *Haize* standards are met should be made in the first instance by the bankruptcy judge after a careful review of the record of the prior case, a hearing at which the parties have the opportunity to offer evidence, and the making of findings of fact and conclusions of law. For the foregoing reasons, the decision of the district court will be reversed and the case remanded for further proceedings not inconsistent with this decision.[10]

---

**10.** In making its determination, the bankruptcy court should keep in mind that the Second Circuit has at all times relevant to this case required *scienter* as a basis for a finding of violation of § 10(b) and Rule 10b–5. This has been true even before the decision of the Supreme Court in *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). See *Chris-Craft Industries, Inc. v. Piper Aircraft Corp.*, 480 F.2d 341 (2d Cir. 1973); *Lanza v. Drexel & Co.*, 479 F.2d 1277 (2d Cir. 1973); *Leasco Corporation v. Taussig*, 473 F.2d 777 (2d Cir. 1972); *Segal v. Gordon*, 467 F.2d 602 (2d Cir. 1972); *Shemtob v. Shearson, Hammill & Co.*, 448 F.2d 442 (2d Cir. 1971).

That court should also consider in determining whether the issue sought to be precluded is the same as that involved in the prior proceeding that the opinion of the Second Circuit Court of Appeals does not disclose that the issue of fraudulent intent was litigated and decided. Such a determination requires a full examination of the trial and appellate record in the prior case, something that was not done by either the bankruptcy court or the district court here.

Also, the bankruptcy court should consider the effect of the alternative grounds for the Second Circuit's decision cited in note 1 above. See *Winters v. Lavine*, 574 F.2d 46 (2d Cir. 1978); *Williams v. Ward*, 556 F.2d 1143 (2d Cir. 1977); *Halpern v. Schwartz*, 426 F.2d 102 (2d Cir. 1970).