**In re Jeffery Corbett DIAZ, Debtor.**

**Audrey DIAZ, Plaintiff,**

v.

**Jeffery Corbett DIAZ, Defendant.**

**Bankruptcy No. 86–61437.**
**Adv. No. 86–6170.**

United States Bankruptcy Court,
N.D. Indiana,
Hammond Division
at Gary/Lafayette.

June 26, 1989.

Ted Mishler, Michigan City, Ind., for defendant.

V. Kupsis, Scherreville, Ind., for plaintiff.

## MEMORANDUM OPINION AND ORDER

KENT LINDQUIST, Chief Judge.

### I

#### Statement of Proceedings

This adversary proceeding is presently before this Court on the Debtor/Defendant Jeffery Diaz' (hereinafter: "Debtor") First Amended Motion to Dismiss ("Second Amended Motion") filed on October 31, 1988 as to a portion of the Plaintiff's First Amended complaint filed on February 26, 1988. The Debtor, a chapter 7 petitioner, is moving to have the Plaintiffs First Amended Complaint dismissed under Federal Rule of Civil Procedure 12(b)(6).

The Plaintiff's First Amended Complaint alleges that a certain indebtedness by the Debtor to her is nondischargeable pursuant to § 523(a)(6). The operative facts alleged are that on or about December 18, 1984, February 5, 1985, and June 5, 1985, the Debtor assaulted the Plaintiff. The Plaintiff's prayer requests both "damages", apparently compensatory, and punitive damages.

The Debtor's Second Amended Motion asserts that the Plaintiff is not entitled to punitive damages, but only to non-reimbursable and unpaid out-of-pocket costs.

In addition, the Debtor's Second Amended Motion asserts that the Plaintiff in her answer to interrogatories filed on July 5, 1988 stated that she filed a state dissolution proceedings versus the Debtor, that a final hearing was held thereon on October 18, 1985, and that she failed to raise any of the claims that are the subject of this adversary proceeding in the state dissolution proceeding.

The Debtor concludes that the dissolution decree of October 18, 1985 was a final adjudication of all claims by the Plaintiff against the Debtor which had arisen during the marriage, and thus the Plaintiff is barred by the doctrine of *res judicata* with reference to the alleged assaults that occurred on December 14, 1984, February 5, 1985, and June 5, 1985.

### II

#### Conclusions of Law and Discussion

Prior to discussing each of these issues, the Court must first discuss the context under which these issues are being presented.

*Federal Rule of Civil Procedure 12(b)(6)*

Fed.R.Civ.P. 12(b)(6) as made applicable to this adversary proceeding pursuant to Bankr.R. 7012 provides as follows:

> [b] HOW PRESENTED. Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counter-claim, cross-claim or third party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion:
>
> \* \* \* \* \* \*
>
> (6) Failure to state a claim upon which relief may be granted,....

Fed.R.Civ.P. 12(b)(6).

■ The Court will only consider the pleading itself (i.e. the complaint), which is being attacked by the Defendant's Fed.R.Civ.P. 12(b)(6) Motion in determining its sufficiency. *Carroll v. Morrison Hotel Corp.*, 149 F.2d 404 (7th Cir.1945). The Court is not permitted to look at matters outside the record. *Lakeland Constr. Co. v. Operative Plasterers, etc.*, 494 F.Supp. 37 (N.D.Ill.1980). The Fed.R.Civ.P. 12(b)(6) Motion is used to test the sufficiency of the complaint. *Pointer v. American Oil Co.*, 295 F.Supp. 573 (S.D.Ind.1968). In this regard the standard to be applied by the Court in determining whether the debtor's complaint can withstand the defendant's motion is stated in Fed.R.Civ.P. 8(a)(2) and (3), which requires that a pleading contain a short and plain statement of the claim showing that the pleader is entitled to relief and a demand for judgment for relief to which he deems himself entitled.

■ Under the Federal Rules, there is no requirement that a complaint state facts sufficient to constitute a cause of action, but only that there be a short and plain statement of the claim showing that the pleader is entitled to relief. *Asher v. Ruppa*, 173 F.2d 10 (7th Cir.1949). In addition, the pleader need not allege the legal theory on which he relies. *Rohler v. TRW, Inc.*, 576 F.2d 1260 (7th Cir.1978). Failure to plead facts showing a theory of liability does not warrant dismissal, rather, defen-dant's response should be to begin discovery to determine or narrow plaintiff's theories of liability. *Orthmann v. Apple River Campground, Inc.*, 757 F.2d 909 (7th Cir.1985). The United States Supreme Court has held that whether allegations in a complaint are called "allegations of fact" or "conclusions of the pleader", the allegations must be taken into account in deciding whether the plaintiff is entitled to have his case heard. *United States v. Employing Plasterers Association*, 347 U.S. 186, 74 S.Ct. 452, 98 L.Ed. 618 (1954).

■ Motions to dismiss are to be granted only with great care. *Kingwood Oil Co. v. Bell*, 204 F.2d 8 (7th Cir.1953). The primary objective of the law is to make a determination on the merits rather than on the pleadings. *Carss v. Outboard Marine Corp.*, 252 F.2d 690 (5th Cir.1958) and *Rennie & Laughlin, Inc. v. Chrysler Corp.*, 242 F.2d 208 (9th Cir.1957).

■ Well-pled allegations of fact contained in the complaint and every inference fairly deductible therefrom are accepted as true for the purposes of the motion including facts alleged on information and belief. *Carroll v. Morrison Hotel Corp.*, 149 F.2d 404, *supra.*

■ The basic test on a motion to dismiss is whether the complaint, with all the well-pled material facts taken as true and construed in the light most favorable to the plaintiff, set forth facts sufficient to state a legal claim. *United States v. Geisler*, 174 F.2d 992 (7th Cir.1949), *cert. den.* 338 U.S. 861, 70 S.Ct. 103, 94 L.Ed. 528.

■ Conclusory allegations are not accepted as true. *See Tamari v. Bache & Co. (Lebanon) S.A.L.*, 565 F.2d 1194 (7th Cir.1977), *cert. den.* 435 U.S. 905, 98 S.Ct. 1450, 55 L.Ed.2d 495 (1978). Where the complaint contains only generally conclusory allegations not supported by any facts the complaint may be challenged by a motion to dismiss. *Briscoe v. LaHue*, 663 F.2d 713 (7th Cir.1981), *aff'd*, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983).

■ The accepted rule in appraising the sufficiency of the complaint is that it

should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Zapp v. United Transp. Union,* 727 F.2d 617 (7th Cir.1984); *Duncan v. Duckworth,* 644 F.2d 653 (7th Cir. 1981); *French v. Heyne,* 547 F.2d 994 (7th Cir.1976). This is consistent with the simplified notice pleading under the Federal Rules in that the complaint should be liberally construed. *Lewis v. Local Union No. 100, etc.,* 750 F.2d 1368 (7th Cir.1984).

■ Mere vagueness or lack of detail does not constitute sufficient grounds to grant a motion to dismiss for failure to state a claim. *Strauss v. City of Chicago,* 760 F.2d 765 (7th Cir.1985).

The task of this Court is thus to harmonize Fed.R.Civ.P. 8(a)(2) and Fed.R.Civ.P. 12(b)(6) and the foregoing cases interpreting the same in light of the plaintiff's statement of claim and applicable substantive law, and determine within the four corners of the complaint, whether all facts well-pled constitute a statement of claim upon which relief can be granted that can withstand the defendant's motion.

The relevant subsection under which the Plaintiff brings this adversary proceeding is 11 U.S.C. § 523(a)(6) which provides as follows:

(a) A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt—

\* \* \* \* \* \*

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity; ...

Section 523(c) provides as follows:

(c) Except as provided in subsection (a)(3)(B) of this section, the debtor shall be discharged from a debt of a kind specified in paragraph (2), (4), or (6) of subjection (a) of this section, unless, on request of the creditor to whom such debt is owed, and after notice and a hearing, the court determines such debt to be excepted from discharge under

paragraph (2), (4), or (6) as the case may be, of subsection (a) of this section.

This Court, in its pre-trial order dated June 21, 1988 held that it had exclusive jurisdiction over this adversary proceeding under Bankruptcy Code §§ 523(a)(6) and 523(c). *See* 3 *Collier on Bankruptcy,* para. 523.13[9] (15th ed. 1988), which states:

Section 523(c) provides that a creditor, who contends that his debt falls within the exception of section 523(a)(2), (4) or (6), must request the bankruptcy court to determine the dischargeability of such debt. Therefore, as to debts which fall within the terms of section 523(a)(2), (4) or (6), the bankruptcy court has exclusive jurisdiction to determine the dischargeability of such debts. But debts that fall within section 523(a)(3) are of the type which the bankruptcy court has concurrent but not exclusive jurisdiction. Should a creditor bring suit in a court other than the bankruptcy court on a debt which he contends is excepted from discharge under section 523(a)(3), the local court would determine the question of dischargeability.

■ The alleged debt in question does not fall within the ambit of § 523(a)(3), and thus there is no question that this Court has exclusive jurisdiction over this adversary proceeding. If this adversary proceeding were based on some subsection of § 523(a) other than (2), (4) or (6), the state court would have concurrent jurisdiction. *See e.g, In re Aurre,* 60 B.R. 621 (Bankr.S. D.N.Y.1986) (§ 523(a)(5)).

Although this adversary is between ex-spouses and a dissolution decree was entered, the issues do not revolve around § 523(a)(5), i.e. whether a portion of the dissolution decree is in the nature of support and nondischargeable, or whether it is in the nature of a property division and thus dischargeable.

The decree does not address in any way or make any findings of fact or conclusions of law relating to the wrongs asserted by the Plaintiff in this adversary proceeding.

The Court will first address the issue of whether as asserted by the Debtor, the

Plaintiff is barred by the doctrine of *res judicata* in the present adversary proceeding based on § 523(a)(6) based on the fact that the assaults occurred prior to the entry of the state dissolution decree, which was tried on the merits, and could have been litigated at that time.

The phrases *"res judicata"* and "collateral estoppel" have been assigned a variety of meanings by the courts in many different contexts and their use has often resulted in only increasing the confusion as to when these doctrines are properly applicable. Accordingly, this Court will not use these terms but will use the term "claim preclusion" in lieu of *"res judicata"* and the term "issue preclusion" in lieu of the term "collateral estoppel".[1]

The reader should thus also be aware that many of the decisions referred to herein do not make reference to the preclusion terminology, but use the terms *res judicata* and collateral estoppel, and thus these variances in terminology must be kept in mind in analyzing these cases.

The general principles of claim preclusion and issue preclusion and their purposes should be first noted. These doctrines serve a multitude of purposes. They encourage reliance upon judicial decisions by preventing inconsistent decisions; they conserve the resources of the Courts and the litigants; they promote comity between the state and federal courts; and, they ensure judicial finality. *See* Ferrell, *The Preclusive Effect of State Court Decisions in Bankruptcy,* First Installment, 58 Amer.Bankr.L.R. 349, 351 (1984).

One frequently quoted definition of the basic Rule of Claim Preclusion is from the United States Supreme Court's opinion in *Commissioner v. Sunnen:*

> The rule provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound "not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissable matter which might have been offered for that purpose." *Cromwell v. County of Sac,* 94 U.S. 351, 352 ... [24 L.Ed. 195 1876]. The judgment puts an end to the cause of action, which cannot again be brought into litigation between the parties upon any ground whatever, absent fraud or some other factor invalidating the judgment.

*Commissioner v. Sunnen,* 333 U.S. 591, 597, 68 S.Ct. 715, 92 L.Ed. 898 (1948).

■ As opposed to claim preclusion, issue preclusion prevents litigation by parties to a previous action of issues that have been "actually and necessarily determined by a court of competent jurisdiction...." *Montana v. United States,* 440 U.S. 147,

---

1. As set forth in the Supreme Court's decision in *Migra v. Warren City School District Board of Education,* 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 894 n. 1, 79 L.Ed.2d 56 (1984): "The preclusive effects of former adjudication are discussed in varying and, at times, seemingly conflicting terminology, attributable to the evolution of preclusion concepts over the years. These effects are referred to collectively by most commentators as the doctrine of *'res judicata'. Res judicata* is often analyzed further to consist of two preclusion concepts: 'issue preclusion' and 'claim preclusion'. Issue preclusion refers to the effects of a judgment in foreclosing relitigation of a matter that has been litigated and decided. This effect also is referred to as direct or collateral estoppel. Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it would have been advanced in an earlier suit. Claim preclusion therefore encompasses the law of merger and bar. This Court on more than one occasion has used the term *'res judicata'* in a narrow sense, so as to, exclude issue preclusion or collateral estoppel. When using that formulation, *'res judicata',* becomes virtually synonymous with 'claim preclusion.' In order to avoid confusion resulting from the two uses of *'res judicata',* this opinion uses the term 'claim preclusion' to refer to the preclusive effect of a judgment in foreclosing relitigation of matters that should have been raised in an earlier suit. (Citations omitted). In the subsequent case of *Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 105 S.Ct. 1327, 1329 n. 1, 84 L.Ed.2d 274 (1985), the Supreme Court continued the same use of this terminology: "In this opinion, we used the term 'claim preclusion' to refer to *'res judicata'* in a narrow sense, *i.e.,* the preclusive effect of a judgment in foreclosing litigation of matters that should have been raised in an earlier suit. In contrast, we used the term 'issue preclusion' to refer to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided."

154, 99 S.Ct. 970, 974, 59 L.Ed.2d 210 (1977). As the Supreme Court noted in *Southern Pacific Railroad Company v. United States:*

> The general principle announced in numerous cases is that a right, question, or fact distinctly put in issue and directly determined by a court of competent jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies; and, even if the second suit is for a different cause of action, the right, question, or fact once so determined must, as between the same parties or their privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified.

*Southern Pacific Railroad Co. v. United States*, 168 U.S. 1, 48–49, 18 S.Ct. 18, 27, 42 L.Ed. 355 (1897).

The *Restatement (Second) of Judgments* defines issue preclusion in the following terms:

> When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.

*Restatement (Second) of Judgments*, § 27 (1982).

Thus, issue preclusion is more limited than claim preclusion as issue preclusion only applies to individual legal and factual issues and not to an entire cause of action.

In the context of prior state court judgments and their non-dischargeability in bankruptcy, the Supreme Court in *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979), has spoken as to claim preclusion or *res judicata,* and denied claim preclusion effect to state court judgments in bankruptcy dischargeability litigation. The issue in *Brown v. Felsen, supra,* was whether the bankruptcy court could consider evidence extrinsic to the judgment and record of a prior state court action to recover monies when determining whether an indebtedness previously reduced to judgment was dischargeable under 11 U.S.C. § 35 of the Act (now 11 U.S.C. § 523(a)(2)(A)). The State court suit was settled by stipulation, and neither the stipulation nor the judgment set out the cause of action upon which the bankrupt's liability was based. The creditor sought to establish that the debtor's judgment debt to him was nondischargeable since the debt was allegedly the product of fraud and malicious conversion. The Debtor-bankrupt argued that the prior state court proceeding did not result in a finding of fraud, and contended that *res judicata* barred relitigation of the nature of his debt. The Court held that the doctrine of *res judicata* does not prevent a bankruptcy court from going behind a state court judgment to determine whether a debt is non-dischargeable. The Court held that Congress intended the bankruptcy court resolve these types of dischargeability issues, and that by limiting the application of claims preclusion, the bankruptcy court would weigh the evidence and make the final determination as to whether the debtor committed fraud or conversion. *Id.* 442 U.S. at 138, 99 S.Ct. at 2212, 60 L.Ed.2d at 775.

The *Brown* Court stated that if *res judicata* were to apply it would force the consolidation of claims in the state court which would "undercut a statutory policy of resolving § 17 questions in bankruptcy court, and would force state courts to decide these questions at a stage when they are not directly in issue and neither party has a full incentive to litigate them." *Id.* 442 U.S. at 132, 99 S.Ct. at 2210, 60 L.Ed.2d at 2210. The *Brown* Court also made the following commentary on the 1970 Amendments to Section 17:

> If a state court should expressly rule on § 17 questions, then giving finality to those rulings would undercut Congress' intention to commit § 17 issues to the jurisdiction of the bankruptcy court. The 1970 Amendments eliminated post-bankruptcy state court collection suits as a means of resolving certain § 17 dischargeability questions. In those suits, creditors had taken advantage of debtors who were unable to retain counsel because bankruptcy had stripped them of

their assets. Congress' primary purpose was to stop that abuse. A secondary purpose, however, was to take these § 17 claims away from state courts that seldom dealt with the federal bankruptcy laws, and to give those claims to the bankruptcy court so that it could develop expertise in handling them. By the express terms of the Constitution, bankruptcy law is federal law, U.S. Const., Art. I, § 8, cl. 4, and the Senate Report accompanying the Amendment described the bankruptcy court's jurisdiction over these § 17 claims as "exclusive." S.Rep. No. 91-1173, p. 2 (1970). While Congress did not expressly confront the problem created by pre-bankruptcy state court adjudications, it would be inconsistent with the philosophy of the 1970 Amendments to adopt a policy of *res judicata* which takes these § 17 questions away from bankruptcy courts and forces them back into state courts. *See In re McMillan*, 579 F.2d 289, 293 (CA 3 1978); *In re Houtman*, 568 F.2d 651, 654 (CA 9 1978); *In re Pigge*, 539 F.2d [369] at 371; [(C.A.4 1976)] 1 D. Cowans, Bankruptcy Law and Practice § 253, p. 298 (1978). *Compare* 1A J. Moore, J. Mulder, & R. Oglebay, Collier on Bankruptcy, para. 17.16[6], p. 1650.1 n. 50 (14th ed. 1978) (1970 Act), with *id.*, para. 17.16[4], p. 1643 (prior state law).

*Id.* 442 U.S. at 135–137, 99 S.Ct. at 2211.

The Courts have consistently applied the holding in the *Brown* case in dischargeability proceedings under 11 U.S.C. § 523(c). *See e.g., Carey Lumber Co. v. Bell*, 615 F.2d 370 (5th Cir.1980); *In re Goodman*, 25 B.R. 932 (Bankr.N.D.Ill.1982); *In re Spector*, 22 B.R. 226 (Bankr.N.D.N.Y. 1982); *In re Dohm*, 19 B.R. 134 (Bankr.N. D.Ill.1982).

It should be noted that the *Brown* case did not involve the issue of whether issue preclusion or collateral estoppel effect should be given to a prior state court judgment by the bankruptcy court in the nondischargeability context, but the Court indicated that collateral estoppel could be applicable, leaving the question open. As the Court stated:

This case concerns *res judicata* only, and not the narrower principle of collateral estoppel. Whereas *res judicata* forecloses all that which might have been litigated previously, collateral estoppel treats as final only those questions *actually and necessarily decided in a prior suit. Montana v. United States*, 440 U.S. 147, 153, 59 L.Ed.2d 210, 99 S.Ct. 970 [973] (1979); *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5, 58 L.Ed.2d 552, 99 S.Ct. 645 [649 n. 5] (1979); *Cromwell v. County of Sac*, 94 U.S. 351, 352–353, 24 L.Ed. 195 (1877). *If, in the course of adjudicating a state-law question, a state court should determine factual issues using standards identical to those of § 17, then collateral estoppel, in the absence of countervailing statutory policy, would bar relitigation of those issues in the bankruptcy court.* (Emphasis added).

*Brown v. Felsen*, 442 U.S. 139 n. 10, 99 S.Ct. 2213 n. 10, 60 L.Ed.2d at 776.

To resolve this issue a close analysis of the United States Constitution, the Bankruptcy Code and the Full Faith and Credit Statute, 28 U.S.C. § 1738, is required.

Article I, § 8, Cl. 4 of the United States Constitution mandates that Congress establish "uniform laws on the subject of bankruptcy throughout the United States." Congress chose to implement that clause by enacting 11 U.S.C. § 523(c) which grants to the bankruptcy court *exclusive* jurisdiction over exceptions to discharge based on 11 U.S.C. § 523(a)(2) (false representations, false pretenses and actual fraud); § 523(a)(4) (fraud or defalcation in a fiduciary capacity, embezzlement or larceny); and, § 523(a)(6) (willful or malicious injury to another entity).

This exclusive jurisdiction was originally vested in the bankruptcy courts by the 1970 Amendments to the Bankruptcy Act of 1898 then in effect. The 1898 Act and its Amendments were superseded by the Bankruptcy Act of 1978, which basically did not change the previous law. The purposes in granting exclusive jurisdiction were to ensure consistency of application

of federal law that would be obtained by having judges with expertise in bankruptcy law pass on dischargeability questions, and to further the bankruptcy "fresh start" policy by protecting debtors against harassing lawsuits initiated by creditors after bankruptcy, and to perhaps protect unwitting waivers of the debtor's discharge. For a discussion of the historical background and purpose of § 523(c) and its predecessor, see Ferrell, *The Preclusive Effect of State Court Decisions in Bankruptcy*, Second Installment, 59 Amer. Bankr. L.J. 55, 56–59 (1985).

In addition the Full Faith and Credit Clause of the United States Constitution, Art. IV, § 1, was implemented by 28 U.S.C. § 1738, the relevant portions of which provide as follows:

> The ... judicial proceedings of any court of any state ... shall have the same full faith and credit in every court within the United States and its territories and possessions as they have by law or usage in the courts of such state.

The Supreme Court in examining the "full faith and credit clause" and 28 U.S.C. § 1738 has stated, "a federal court must give to a state court judgment the same preclusive effect as would be given that judgment under the law of the state in which the judgement was rendered". *Migra v. Warren City School District Board of Education*, 465 U.S. 75, 80, 104 S.Ct. 892, 896, 79 L.Ed.2d 56, 63 (1984). *See also, Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985); *McDonald v. West Branch*, 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984); *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982).

In *Marrese* the Court noted:

> The preclusive effect of a state court judgment in a subsequent federal lawsuit generally is determined by the full faith and credit statute, which provides that state judicial proceedings, "shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken." 28 U.S.C. § 1738. This statute directs a federal court to refer to the preclusion law of the state in which judgment was rendered.

*Marrese v. Academy of Orthopaedic Surgeons*, 470 U.S. at 380, 105 S.Ct. 1327, 1331–32, 84 L.Ed.2d 274.

However, the determination of state issue preclusion rules is a very difficult and complicated matter and as the Chief Justice in his concurring opinion in *Marrese*, stated:

> [N]o guidance is given as to how the District Court should proceed if it finds state law silent or indeterminate on the claim preclusion question. The Court's refusal to acknowledge this potential problem appears to stem from a belief that the jurisdictional competency requirement of *res judicata* doctrine will dispose of most cases like this.

*Id.* 470 U.S. at 388, 105 S.Ct. at 1336, 84 L.Ed.2d at 286.

The Supreme Court in *Allen v. McCurry*, 449 U.S. 90, 96, 101 S.Ct. 411, 415, 66 L.Ed.2d 308, 314 (1980), indicated that only a clear congressional intent contrary to 28 U.S.C. § 1738 will permit a federal court to deny the preclusive effect of a state court judgment. In *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 467, 102 S.Ct. at 1890, 72 L.Ed.2d at 271, the Supreme Court stated, "an exception to § 1738 will not be recognized unless a later statute contains an express or implied partial repeal ... Repeals by implication are not favored." The Court gave as an example of clear intent the federal habeas corpus statute, 28 U.S.C. § 2254. The Court in *Kremer* also stated, "§ 1738 does not allow federal courts to employ their own rules of *res judicata* in determining the effect of state judgments. Rather, it goes beyond the common law and commands a federal court to accept rules chosen by the state from which the judgment is taken". *Id.*, 456 U.S. at 481, 102 S.Ct. at 1898, 72 L.Ed.2d at 280.

It appears however, that the general rules as set out above have been ignored by the federal courts in bankruptcy cases relating to the issue of nondischargeability

and the effect of prior state litigation. "Instead the bankruptcy courts have applied federally developed rules of issue preclusion often without acknowledgment of the customary practice," Ferrell, *The Preclusive Effect of State Court Decisions in Bankruptcy*, First Installment, 58 Amer. Bankr.L.J. 349, 357 (1985).

The general test most frequently applied by the bankruptcy courts is found in *In re Ross*, 602 F.2d 604, 5 B.C.D. 700 (3rd Cir. 1979). *Ross* sets out a four point test before the doctrine of issue preclusion or collateral estoppel can bar the relitigation of a dischargeability issue. This test is as follows:

1. The issue sought to be precluded must be the same as that in the prior action;

2. The issue must have been actually litigated;

3. The issue must have been determined by a valid and final judgment; and

4. The determination must have been essential to the judgment.

*Id.* 602 F.2d at 608.

The Court in *Ross* held that the Bankruptcy court must carefully review the record in the prior case and hold a hearing at which the parties have an opportunity to present evidence to determine whether these standards have been met.

This test is similar to the one set out in *Restatement (Second) of Judgments*, § 27 (1982).

There are minor differences in this federal test among the various circuits, but the *Ross* criteria appears to be the most frequently utilized. *See e.g., Spilman v. Harley*, 656 F.2d 224 (6th Cir.1981); *In re Carothers*, 22 B.R. 114, 119 (Bankr.D.Minn. 1982); *United States Life Title Ins. Co. v. Dohm*, 19 B.R. 134, 137 (N.D.Ill.1982); *In re Supple*, 14 B.R. 898, 899 (Bankr.D.Conn. 1981). The most difficult part of the test is the "identity of issue" requirement, as the Court in *In re Supple* stated:

[a] bankruptcy court cannot give collateral estoppel effect to a prior state court adjudication if the issue before the bankruptcy court differs from the issue which was before the state court. The standards employed by the state court in reaching its decision must comport with federal standards. To insure such an identity of standards, a bankruptcy court must scrutinize the entire record of the state court proceedings.

*Id.* at 904.

■ It should also be noted that the party seeking to assert collateral estoppel has the burden of proving all the requisites for its application. *Spilman v. Harley*, 656 F.2d 224, 229, *supra; In re Spector*, 22 B.R. 226, 231 (N.D.N.Y.1982). Any reasonable doubt as to what should be decided should be resolved against using it as estoppel. *Id.*

■ In the specific context of a nondischargeability proceeding in the bankruptcy court in order to give collateral estoppel effect to a prior state court judgment, the bankruptcy court must first determine if all of the elements of collateral estoppel as established by applicable state law have been met.

The Court must thus look to the law of collateral estoppel or issue preclusion in the state of Indiana and determine its elements.

As a matter of background, the Court would note that it was held in the case of *Hardesty v. Bolerjack*, 441 N.E.2d 243, 245 (Ind.App.1982), that the doctrine of *res judicata* is divided into two parts: The first is "claim preclusion" in which prior adjudication of the *same* cause of action acts as a complete bar to any subsequent claim, and the second is "issue preclusion", which is applied when a particular issue is adjudicated and then put into issue in a subsequent suit on a *different* cause of action. *See also, Snodgrass v. Baize*, 405 N.E.2d 48, 51 (Ind.App.1980), *rehrg. den.* 409 N.E.2d 645; *Leal v. Krajewski*, 803 F.2d 332 (7th Cir.1986).

■ Collateral estoppel (hereinafter: "issue preclusion") or "estoppel by verdict" as the doctrine is sometimes referred to in the State of Indiana, applies when a particular issue is adjudicated and then put into issue in a subsequent suit on a different

cause of action between the parties or their privies; in such cases, former adjudication of the issue is held to bind the parties or their privies in subsequent litigation. (*Cf.* "Estoppel by judgment" as *res judicata* is sometimes referred to in Indiana). *Cox v. Indiana Subcontractors Ass'n., Inc.*, 441 N.E.2d 222 (Ind.App.1982); *Gorski v. Deering*, 465 N.E.2d 759, 761–762 (Ind.App. 4th Dist.1984). Where there was only one lawsuit, one trial, and one judgment, the doctrine of issue preclusion cannot apply. *Nation v. State*, 445 N.E.2d 565, 570 (Ind.App. 1983).

The doctrine of issue preclusion precludes litigation of issues not causes of action. *In re Estate of Nye*, 157 Ind.App. 236, 299 N.E.2d 854, 863 (1973) *rehearing overruled*, 157 Ind.App. 236, 301 N.E.2d 786.

To establish issue preclusion by means of a prior judgment in Indiana the following elements must be shown:

1. A suit
2. A final judgment
3. Identity of subject matter
4. Identity of parties

*Burtrum v. Wheeler*, 440 N.E.2d 1147, 1150 (Ind.App. 2d Dist.1982).

Issue preclusion is allowed to prevent relitigation of any legal or factual issue that has been *actually litigated and determined* by a final judgment. *Frye v. United Steelworkers of America*, 767 F.2d 1216 (7th Cir.1985), *cert. den.* 474 U.S. 1007, 106 S.Ct. 530, 88 L.Ed.2d 461. For the purposes of application of issue preclusion, it is not the similarity between the types of litigation or actions involved, but between factual issues and their roles in the respective actions that is important. *Id.*

In order for issue preclusion to apply the particular issue must have been adjudicated and put into issue in a *subsequent* suit on a *different cause of action* between the same parties or those in privity with them. *In re Marriage of Moser*, 469 N.E.2d 762, 765–766 (Ind.App. 1st Dist. 1984); *Indiana University v. Indiana Bonding Sur. Co.*, 416 N.E.2d 1275, 1283 (Ind.App.1981); *State of Indiana Highway Commission v. Speidel*, 392 N.E.2d 1172, 1175 (Ind.App. 2d Dist.1979).

In applying the foregoing principles of issue preclusion to the case at bar, it is clear that the adversary proceeding by the Plaintiffs to determine that the alleged obligation created by the various alleged assaults is nondischargeable pursuant to § 523(a)(6), is a federal cause of action separate and distinct from that of the state cause of action of the Plaintiff for dissolution of the marriage which was merged into the state court dissolution decree. *See Brown v. Felsen, supra;* 11 U.S.C. § 523(c). The question of whether a debt is dischargeable in bankruptcy is a separate and independent question of federal law from the Plaintiff's petition for dissolution filed in the state court, and state law is not applicable. *Matter of Pappas*, 661 F.2d 82, 86 (7th Cir.1981).

It is thus clear that inasmuch as this § 523(a)(6) adversary proceeding is a separate and distinct federal claim for relief from the pre-petition dissolution proceeding that the doctrine of *res judicata* cannot apply based on *Brown v. Felsen, supra*. It is also clear that the doctrine of collateral estoppel cannot apply as by the Debtor's own assertions the alleged assaults were never pled, placed in issue and actually adjudicated in the state court dissolution proceeding. Thus, based on the Indiana law of collateral estoppel that doctrine cannot apply in this subsequent adversary proceeding.

The Court would also note that I.C. § 31–1–11.5–4(e) provides that Indiana Dissolution Proceedings must comply with the Indiana Rules of Civil Procedure.

Indiana Trial Rule 18(A), Joiner of Claims provides that a party asserting a claim for relief *may* join, either as independent or alternate claims, as many claims, whether legal, equitable, or statutory as he has against an opposing party.

The Indiana Court of Appeals in *Peterson v. Culver Education Foundation*, 402 N.E.2d 448, 460 (Ind.App. 1st. Dist.1980) noted that this Rule does not make joiner

978

mandatory, but is permissive in its operation.

In addition, the Indiana Supreme Court in the case of *Brooks v. Robinson*, 259 Ind. 16, 284 N.E.2d 794 (1972), abolished the common law doctrine of interspousal immunity in tort actions.

Thus, the Plaintiff had an independent tort claim under Indiana law separate and distinct from her grounds for dissolution, and there were no requirements that the tort action be joined with the dissolution proceeding pursuant to Indiana Trial Rule 18(A).

The Court will next address the issue of whether the Plaintiff may recover punitive damages in addition to compensatory damages if she prevails in this adversary proceeding under § 523(a)(6) for willful and malicious assault and battery.

"Claim" is defined in its relevant part at 11 U.S.C. § 101(4)(A) as "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured." A "debt" is defined as "liability on a claim" 11 U.S.C. § 101(11). What "debts" are not dischargeable under § 523(a)?

The Ninth Circuit in the case of *In re Adams*, 761 F.2d 1422, 1427–1428 (9th Cir. 1985), held that both compensatory and punitive damages are subject to findings of nondischargeability, *citing, Coen v. Zick*, 458 F.2d 326 (9th Cir.1972), (construing section 523(a)(6) involving willful and malicious conduct).

The Adams Court stated as follows:

Finally, appellant contends that regardless of the legal standard applied to the determination of dischargeability, only punitive damages may be found to be nondischargeable. Appellant argues that since punitive damages are designed to punish a wrongdoer for conduct which is intentional, willful and malicious, a finding of nondischargeability must necessarily be limited to debts arising from awards of punitive damages. We disagree.

In *Coen v. Zick*, 458 F.2d 326 (9th Cir.1972), we addressed the scope of dischargeability pursuant to 11 U.S.C. § 35(a)(8) (1976), the precursor to section 523(a)(6) (1982). We concluded that the exception to discharge turns upon the nature of the act which gave rise to the liability rather than upon the nature of the liability. We held:

The statutory exception which measures nondischargeability is "... for liabilities ... for willful or malicious injuries to the person or property of another...." The exception is measured by the nature of the act, *i.e.*, whether it was one which caused willful and malicious injuries. *All liabilities resulting therefrom are nondischargeable.* One liability is limited to actual compensation.... But for this type of conduct, yet another liability may be incurred if the jury under proper instructions sees fit to award it. That is for punitive damages. Both types of liability are within the statute as "liabilities" for "willful or malicious injuries to the person or property of another."

*Id.* at 329–30 (emphasis added).

There is no evidence in the legislative history underlying either section 523(a)(6) or section 523(a)(9) that suggests that Congress intended to limit the scope of nondischargeability to punitive damages. We therefore see no reason to depart from the rule articulated in *Coen*. Accordingly, we conclude that both compensatory and punitive damages are subject to findings of nondischargeability pursuant to sections 523(a)(6) and 523(a)(9).

*Id.* 761 F.2d at 1427–1428. *See also, In re Willis*, 2 B.R. 566 (Bankr.M.D.Ga.1980) *citing, Coen v. Zick, supra; In re Carey*, 7 B.C.D. 6 (Bankr.S.D.Ohio 1980); *In re Cummings*, 3 B.C.D. 908 (Bankr.W.D.Mo. 1977).

The court in *Birmingham Trust Nat. Bank v. Case*, 755 F.2d 1474, 1477 (11th Cir.1985) analyzed the concept of "debt" as defined at 11 U.S.C. § 101(11) and "claim" as defined at 11 U.S.C. § 101(4) in the context of fraud under § 523(a)(2)(A), and the proper measure of damages, although not addressing punitive damages directly.

The court held that a "debt" based on the plain language of the statute is an all or nothing proposition, and that the purpose of creating fraud exceptions to discharge was to discourage fraudulent conduct and to ensure that relief intended for honest and unfortunate debtors did not inure to the benefit of dishonest ones. The court also noted that one of the purposes of the fraud exception to discharge is to punish the debtor for engaging in fraudulent conduct.

The Court in *In re Wilson*, 72 B.R. 956 (Bankr.M.D.Fla.1987) was a case based on securities fraud. The court gave collateral estoppel effect to a prior default judgment in the United States District Court, but denied that portion as to the statutory treble damages awarded pursuant to state law. There the Court stated:

Section 523(a)(2)(A) excepts from discharge only those monies actually obtained by fraud.... The judgment as trebled cannot be excepted from discharge in its entirety because N.C.Gen. Stat. § 75–16 is an attempt by the North Carolina legislature to punish persons who engage in unfair and deceptive acts and practices affecting commerce. This exercise of police power by the North Carolina legislature is contrary to the purpose of bankruptcy and fraud exception to discharge and cannot be enforced under these circumstances. *See Birmingham Nat. Bank v. Case*, 755 F.2d 1474, 1477 (11th Cir.1985) (Footnote omitted).

*Id.* 72 B.R. at 960.

The Court in *In re Record Co., Inc.*, 8 B.R. 57 (Bankr.S.D.Ind.1980), dismissed a § 523(a)(2) counter complaint for $100,-000.00 in punitive damages (there being no prior state court judgment), and without further discussion or citation of any authority, stated as follows:

It is a well-established principle of bankruptcy that damages granted on nondischargeability complaints for obtaining money by false pretenses are limited to funds actually obtained by the representation. Consequential damages are not included, nor are punitive damages.

*Id.* at 60.

The Court in *Matter of Cheatham*, 44 B.R. 4 (Bankr.N.D.Ala.1984), gave collateral estoppel effect to a prior state court judgment, but held that the punitive damages awarded therein were dischargeable. The court noted as follows:

This Court cannot, in equitable good conscience, punish the innocent unsecured creditors by virtue of a substantial depletion of the estate for a wrong committed by the debtor. As noted in *In re Ryan*, 15 B.R. 514, 520 (Bkrtcy.Md.1981), "[t]he intent of Congress was that unsecured creditors should be protected from 'the debtor's wrongdoing.'" (*Citing* H.R.Rep. No. 950595, 1st Sess. 382 (1977), U.S. Code Cong. & Admin.News 1978 p. 5787). The *maximum actual pecuniary loss suffered by the plaintiff as a result of the false pretenses is the amount paid for the automobile*—$900.00. Even if the car sold by the defendant had been absolutely worthless, the plaintiff would be adequately compensated by a damage award of $900.00. Before the Bankruptcy Code went into effect, there was a great deal of confusion and conflicting judicial interpretations of the dischargeability of punitive damages assessed against the debtor in prior proceedings. *See Beard, supra,* [5 B.C.D. 680] at 682, 683; [ (Bkrtcy.M.D.Tenn.1979) ] *contra, U.S. v. RePass*, 688 F.2d 154, 157 (2d Cir. 1982). Such uncertainty was principally due to the "provable debt" concept contained in Section 17 and Section 63 of the Bankruptcy Act. However, the Bankruptcy Code no longer refers to the provable and non-provable distinctions. The "provability" of a debt no longer has any bearing on whether or not the debt is dischargeable. *See 3 Collier on Bankruptcy*, Section 523.02 (15th ed.1983). Thus, based on the maximum amount of actual loss suffered by the plaintiff and in the interest of fairness to the unsecured creditors, the Court concludes that the plaintiff is entitled to a judgment in the amount of $900.00, and said amount

is to be nondischargeable pursuant to 11 U.S.C. Section 523(a)(2)(A). The balance of the state court jury award is due to be allowed as an unsecured claim, and is therefore dischargeable.

*Id.* 44 B.R. at 8–9.

*See also, Matter of Larson,* 79 B.R. 462 (Bankr.W.D.Mo.1987); *In Matter of Church,* 69 B.R. 425 (Bankr.N.D.Tex.1987); *In re Brown,* 66 B.R. 13, 16 (Bankr.D.Utah 1986); *In the Matter of Suter,* 59 B.R. 944 (Bankr.N.D.Ill.1986); and *In re Beard,* 5 B.C.D. 680 (Bankr.M.D.Tenn.1979) (an Act case holding that punitive damages were a penalty and not provable), where the Courts specifically held that punitive damages are not nondischargeable in bankruptcy.

In *Church,* the court gave collateral estoppel effect to a state court jury verdict, in which multiple damages were awarded to the creditor under a state deceptive practice act in addition to actual pecuniary loss. The state court also entered judgment for punitive fees and attorney's fees. The bankruptcy court noted that Texas law did not permit attorney's fees to be awarded as actual damages in a suit for fraud, but that there was two potentially independent grounds for the award of attorney's fees— case law permitting attorney's fees when punitive damages are awarded, and the Texas Deceptive Trade Practices Act. The court held that the attorney's fees awarded based on the fact the judgment also awarded punitive damages could not be held nondischargeable, but that the attorney's fees could be nondischargeable based on the statute. The court cited *In re Suter,* 59 B.R. 944 *supra,* with approval as well as *In re Brown,* 66 B.R. 13, 16 (Bankr.D.Utah 1986).

In *In re Church,* the court stated as follows:

The Debtor was also adjudged separately liable for an additional $25,000.00 punitive damages; duplicating the punitive damages awarded against Contemporary Homes and making the total judgment against the Debtor $112,672.34.

Since the court has determined that summary judgment is appropriate as to the Section 523(a)(2)(A) claim of the Plaintiffs, it follows that the debt attributable to the "actual fraud" of the debtor should similarly be accorded summary treatment. The difficulty arises from the conflicting case law and the ambiguity of the statute. Section 523(a)(2) excepts from discharge any debt "for money, ... *to the extent obtained by—* (A) ... actual fraud,...." (Emphasis supplied).

The Plaintiffs argue that the entire judgment debt must be found to be nondischargeable. They cite *Birmingham Trust National Bank v. Case,* 755 F.2d 1474 (11th Cir.1985) in support of this proposition. In that opinion the Court of Appeals held that, when a debt is declared non-dischargeable on the basis of a false representation in a financial statement, the entire debt is non-dischargeable, and there is no off-set, so to speak, for the value of property returnable to the creditor even though it may be the same property so obtained. Moreover, it has been held that a bankruptcy court may not find certain portions of a debt to be nondischargeable and certain portions discharged. *In re Stahl,* 59 B.R. 2 (Bankr.W.D.La.1986). It is noteworthy that in *Birmingham Trust* the statutory language quoted by the Eleventh Circuit omitted the phrase "to the extent obtained by". Unfortunately, the guidance of legislative history is lacking as to this statutory riddle. The leading treatise on bankruptcy indicates that the *Birmingham Trust* decision is not in complete accord with the 1984 Amendments to the Code and that the phrase "to the extent obtained by" is limiting language. 3 *Collier on Bankruptcy,* para. 523.08 (1986).

It may be conceded that the statutory language is ambiguous and, though seemingly simple, difficult to apply to the actual case. In a recent opinion by Bankruptcy Judge Ginsberg, *Matter of Suter,* 59 B.R. 944 (Bankr.N.D.Ill.1986), it was held that the effect of the emphasized language of the statute quoted above was to preclude finding punitive damages such as were awarded by the

state court against the Debtor here to be non-dischargeable. It must be said that the punitive damages award of $50,-000.00 against the Debtor cannot be considered to be within the language of Section 523(a)(2)(A). *In re Brown*, 66 B.R. 13, 16 (Bankr.D.Utah 1986). The same reasoning applies to the award of damages for emotional distress since this does not represent "money, property, or services, or ... credit ... obtained by ... actual fraud". Thus, an additional $5,000.00 must be eliminated from the nondischargeable debt determined today. *See In re Romero*, 535 F.2d 618 (10th Cir.1976). Likewise, the award of multiple damages under the Texas Deceptive Trade Practices Act cannot be included. Each of these components of the damages awarded under the state court judgment represents damages for something other than actual pecuniary loss suffered by the Plaintiffs.

After having given careful consideration to the import of the statutory language, this court is of the view that the phrase "to the extent obtained by" requires that an actual pecuniary loss to the creditor result from the fraudulent conduct of the debtor that gave rise to the debt. This excludes from the nondischargeable debt under Section 523(a)(2)(A) those portions of the judgment debt that are in the nature of a penalty having no relation to the actual pecuniary loss resulting from the debtor's fraud.

*Id.* 69 B.R. at 434–435.

In *Matter of Suter*, prior to the debtor's bankruptcy, the District Court had entered a judgment versus the debtor on the merits based on four counts, one count was based on RICO (18 U.S.C. § 1962(c)), and one count was for fraud as set forth in § 523(a)(2). The District Court trebled the civil damages pursuant to 18 U.S.C. § 1964(c). The bankruptcy court held the trebled damages dischargeable and stated as follows:

Section 523(a)(2)(A) excepts from discharge "any debt ... for money ... *the extent obtained by* ... actual fraud." (emphasis added). The district court

judgment here clearly is a debt for money under the Bankruptcy Code. However, § 523(a)(2)(A) precludes the dischargeability of a debt for money *only* to the extent the money was obtained by actual fraud. In this case, the debtor defrauded McCullough in the amount of $14,045.51. Because of the debtor's fraud, McCullough had to expend $7,141.14 in attorney's fees in an attempt to recover his actual damages. The treble damages awarded by the District Court under RICO are punitive in nature and in no way alter the extent of the damages for money obtained by actual fraud. The trebling of McCullough's damages did not increase the amount of money which the debtor obtained from McCullough by actual fraud. That amount was and continues to be $14,-045.51. It is possible to argue that the attorneys' fees incurred by the debtor in obtaining the prebankruptcy judgment also represent a debt for money obtained by the debtor's actual fraud, although that analysis is admittedly strained at best. Thus, arguably $21,186.65 plus interest at the legal rate is the amount of the debt for money *to the extent obtained by* the debtor's fraud. It is not possible under any rational reading of the English language that two thirds of the trebling of McCullough's actual damages in any way represents a "debt for money ... to the extent obtained by ... actual fraud."

The result reached by this Court also accords with other provisions of the Bankruptcy Code, particularly § 523(a)(7). Section 523(a)(7) provides for the nondischargeability of a debt owed to a governmental unit for a fine, penalty, or forfeiture that is not compensation for any actual damages. In § 523(a)(7), Congress created a specific exception to discharge for noncompensatory damages. However, Congress clearly determined to not allow nongovernmental entities to seek the nondischargeability of punitive damages under § 523(a)(7). The language of §§ 523(a)(2)(A) and 523(a)(7) when read in

harmony compel the conclusion that Congress intended noncompensatory damages to be excepted from discharge only where they are owed to a governmental entity pursuant to § 523(a)(7). No other result can be gleaned from interpreting the plain language of those sections.

Finally it must be remembered that § 523(a)(2)(A) is a provision conflicting with the fresh start philosophy of the Bankruptcy Code. Therefore, it should be read no more broadly than required to implement the policy underlying § 523(a)(2)(A), i.e. the policy against debtors avoiding fraud-based debts in bankruptcy. *See In re Prestridge*, 45 B.R. 681, 684 (Bankr.W.D.Tenn.1985); *In re Lipscomb*, 41 B.R. 112, 116 (Bankr.E.D. Va.1984). If McCullough collects $14,-045.51 plus interest and attorneys' fees from the debtor, he will be made whole. If he collects $56,935.62, he will, in effect, receive a windfall in the amount of $35,748.97. The Bankruptcy Code intends the former result. It does not intend the latter. Section 523(a)(7) recognizes that debtors are to be punished by governmental units in (and after) bankruptcy cases, not by creditors. The motion to reconsider is denied.

*Id.* 59 B.R. at 946–947.

It is clear that a fine, penalty or forfeiture payable to or for the benefit of a *governmental unit* is not dischargeable under § 523(a)(7). However, in the case *sub judice*, the Plaintiff clearly prays that the punitive damages be personally awarded to the Plaintiff rather than to or for the benefit of a governmental unit. *Matter of Suter*, 59 B.R. 944 *supra*. The punitive damages claimed are not in the nature of a fine, penalty or forfeiture payable to or for the benefit of a governmental unit, and are thus not dischargeable on that basis. Since civil punitive damages are payable directly to the Plaintiff arising out of the Debtor's alleged willful and malicious conduct, can such damages be held to be nondischargeable in a dischargeability proceeding under § 523(a)(2), (4) or (6)? The Court notes that this adversary proceeding is not based on § 523(a)(2)(A), but on § 523(a)(6). Thus the

"to the extent obtained by" language found in § 523(a)(2)(A) is not applicable.

It has been held that statutorily authorized punitive damage awards are nondischargeable. *In re Maxwell*, 51 B.R. 244 (Bankr.S.D.Ind.1983). In *Maxwell*, the award of punitive damages by the state court in a summary judgment was held to be nondischargeable, since they were awarded pursuant to state law which rendered the actual debt nondischargeable. The court gave collateral estoppel effect to the prior state court judgment. *Maxwell* involved a state court judgment concerning the debtor's "willful and malicious" conduct. The court in *Maxwell* gave a collateral estoppel effect to a prior state court determination as to the debtor's conduct. In *Maxwell*, the prior state court judgment was a summary judgment which awarded "punitive" damages based on I.C. § 34–1–30–1 and I.C. § 35–43–4–3 for criminal conversion. The court, through Judge Bayt, noted that Indiana law allows punitive damages "whenever the elements of fraud, malice, gross negligence or aggression mingle in the controversy", *citing, Gorman v. Saf–T–Mate, Inc.*, 513 F.Supp. 1028, 1037 (N.D.Ind.1981), or "where the defendant is ... guilty of ... willful and wanton misconduct", *citing, Baker v. American States Insurance Co.*, 428 N.E.2d 1342, 1351 (Ind.App.1981). Judge Bayt did not discuss his holding in *In re Record Co., supra*, but that case is distinguishable from *Maxwell*, in that in *In re Record Co., supra*, there was no prior court judgment which could be given collateral estoppel effect.

 This Court concludes that when pre-petition conduct justifies the awarding of punitive damages, the Bankruptcy Court may include the same in any judgment finding nondischargeability when they have been proven up by competent, clear and convincing evidence.

 Indiana allows punitive damages upon proof by clear and convincing evidence. *Travelers Indemnity Co. v. Armstrong*, 442 N.E.2d 349 (Ind.1982); *Orkin Exterminating Co. v. Traina*, 461 N.E.2d 693 (Ind.App. 4th Dist.1984).

The Court agrees with the conclusion reached by the Court in *In re Adams*, 761 F.2d 1422, *supra*. The "fresh start" policy of the Bankruptcy Code should have no application to a debtor who has committed a nondischargeable act that is so grievous that after a full trial on the merits, and after that court, with a full opportunity to observe the witnesses, finds punitive damages are appropriate based on clear and convincing evidence. The very purpose of § 523(a)(6) is in fact to penalize the debtor for his misdeeds where he has acted willfully and maliciously versus another entity, and thus the allowance of punitive damages is not inconsistent with the purposes of the Code in such an instance.

It is therefore,

ORDERED, that the Debtor's Second Motion is hereby Denied. And it is further,

ORDERED, that this adversary proceeding be set down for a Status Conference on July 27, 1989 at 1:00 o'clock P.M.