900 F.2d 621
 22 Collier Bankr.Cas.2d 831, Bankr. L. Rep. P 73,297
In re Samuel BRAEN, Jr., Debtor.
Nicholas LAGANELLA and PT & L Construction Co., Inc., Appellants,
v.
Samuel BRAEN, Jr.
 No. 89-5185.
 United States Court of Appeals,
Third Circuit.
 Argued Sept. 29, 1989.
Decided March 30, 1990.
Rehearing and Rehearing In Banc Denied April 27, 1990.
 
 Herbert C. Klein (argued), Mary Ann Walker Collins, Klein, Chapman, Greenburg, Henkoff & Siegel, Clifton, N.J., for appellants.
 H. Curtis Meanor (argued), Thomas S. Doerr, Podvey, Sachs, Meanor & Catenacci, Newark, N.J., for appellee.
 Before HIGGINBOTHAM, Chief Judge, and STAPLETON and SCIRICA, Circuit Judges.
 OPINION OF THE COURT
 STAPLETON, Circuit Judge:
 
 
 1
 In this appeal, we review the district court's holding that a state court malicious prosecution judgment awarded against the debtor, Samuel Braen, Jr., did not collaterally estop consideration of whether Braen had been willful and malicious within the meaning of Sec. 523(a)(6) of the Bankruptcy Code 94 B.R. 35. We conclude that the appellants have demonstrated that collateral estoppel is appropriate in this case and will therefore reverse the district court's decision.
 
 I.
 
 2
 Appellants Laganella and P.T. & L. filed suit in a New Jersey state court against Braen for malicious prosecution, alleging that Braen had deliberately misinformed New Jersey authorities that Laganella and his construction firm P.T. & L. had rigged the bids on a state construction project. In response to special interrogatories given by the trial judge, the jury found that the appellees had proved, by a preponderance of the evidence, that: (1) Braen was responsible for the institution of criminal proceedings against Laganella; (2) there was a lack of probable cause for the criminal prosecution; and (3) Braen was activated by a malicious motive in prosecuting the criminal complaint. Accordingly, the jury awarded Laganella compensatory damages of over $10 million and punitive damages of $150,000. The Superior Court of New Jersey, Appellate Division, affirmed the judgment of the trial court and the Supreme Court of New Jersey denied Braen's petition for certification.
 
 
 3
 Roughly one month after the denial of certification, Braen filed a Chapter 11 bankruptcy petition with the United States District Court for the District of New Jersey. Later that year, Laganella asked the bankruptcy court to declare the state court judgment nondischargeable under 11 U.S.C. Sec. 523(a)(6), which provides that a creditor can avoid the discharge of a debt incurred "for willful and malicious injury by the debtor...." Laganella contended that since Braen was found to have acted willfully and with malicious intent in the New Jersey proceeding, collateral estoppel barred reconsideration by the bankruptcy court of whether Braen's conduct satisfied Sec. 523(a)(6)'s culpability requirement. Braen responded that issue preclusion was not justified in this case for three reasons: (1) Laganella was required to shoulder a less onerous burden of proof in the state proceeding than is required by Sec. 523; (2) the state trial judge's instructions permitted the jury to find Braen liable based on a finding that Braen had acted only negligently or recklessly; and (3) because Braen was ill and his lawyer was negligent during the state court action, the application of issue preclusion to this case would be unfair.
 
 
 4
 The bankruptcy court rejected each of Braen's contentions and consequently held the malicious prosecution judgment nondischargeable. The district court reversed and remanded for an evidentiary hearing on whether Braen had been "willful and malicious" within the meaning of Sec. 523(a)(6). We have jurisdiction under 28 U.S.C. Sec. 1292(b).
 
 II.
 A.
 
 5
 The jury in the malicious prosecution suit found that Laganella established Braen's malicious motive by a preponderance of the evidence. Braen asserts that a creditor seeking to avoid discharge in bankruptcy must prove one of the grounds listed in Sec. 523--in this case a willful and malicious injury--by clear and convincing evidence. Accordingly, Braen argues that because Laganella bore a lesser burden of proof in the malicious prosecution suit than is required by Sec. 523, collateral estoppel does not apply.
 
 
 6
 We agree that disparate burdens of proof foreclose application of the issue preclusion doctrine.[1] We disagree, however, with Braen's contention that a creditor seeking to avoid discharge under Sec. 523(a)(6) must prove malice by more than a preponderance of the evidence.
 
 
 7
 Debts arising out of "willful and malicious injury by the debtor" are not the only obligations that Sec. 523 excepts from discharge. Subsection (a) lists nine categories of nondischargeable debts, most of which contain a number of subcategories. The excepted debts arise in many disparate circumstances. Included as nondischargeable obligations, among others, are debts arising out of: (1) taxes or customs duties; (2) obtaining money, property, or services by false pretenses; (3) claims that were not timely filed; (4) fraud while acting in a fiduciary capacity, embezzlement, or larceny; (5) alimony or support; (6) fines, penalties and forfeitures; (7) education loans; and (8) judgments or consent decrees in suits based on the debtor's operation of a vehicle while intoxicated. Because Section 523 covers so many disparate circumstances, we doubt that Congress, without so stipulating, expected bankruptcy courts to apply a single standard of proof in all instances where a creditor asks for a declaration of nondischargeability. The suggestion, for example, that Congress intended the courts to require of spouses alleging a failure to pay child support the same kind of clear and convincing evidence universally required of creditors claiming fraud strikes us as farfetched.
 
 
 8
 Moreover, we have searched in vain for a satisfying explanation as to why Congress would have wished to insist on any more or any less assurance of reliability in a Sec. 523 decision favoring the creditor than would normally be required to establish that particular kind of debt in any other proceeding. While Braen suggests that the "fresh start" policy behind the Bankruptcy Act provides such an explanation, we are unpersuaded. Although it is true that the bankruptcy laws were generally intended to give troubled debtors a second chance, the nondischargeability exceptions reflect Congress' belief that debtors do not merit a fresh start to the extent that their debts fall within Sec. 523. See Combs v. Richardson, 838 F.2d 112 (4th Cir.1988). In essence, Braen argues that the fresh-start policy should guide the bankruptcy court's decision as to whether a claim is of a type that does not warrant fresh-start treatment. To the contrary, we believe the "fresh start" policy underlying the Code provides no help in determining what Congress intended regarding standards of proof.
 
 
 9
 Finally, we believe that Congress may well have seen an important utility in a nondischargeability scheme that provides the same degree of assurance of reliability in a Sec. 523 proceeding as that which normally would be required in another proceeding to establish the same kind of debt. We find nothing in the text or legislative history suggesting that Congress contemplated that a debt previously established in a judicial proceeding to be of the type that is nondischargeable would have to be relitigated in the bankruptcy court. Yet that is precisely the kind of waste of judicial resources that acceptance of Braen's theory would require. If we were to adopt his suggestion and require proof of malice by clear and convincing evidence, relitigation would be required in virtually every proceeding under Sec. 523(a)(6) since, with the sole exception of defamation in "public figure" cases, states normally require that malice in the context of a tort suit be proven by a preponderance of the evidence. We decline to attribute to Congress an intention that would require the bankruptcy court to engage in duplicative proceedings of this kind.
 
 
 10
 This conclusion is not, as Braen suggests, at war with a host of contrary authority. To the contrary, we find it supported by the better reasoned legal precedent. While six courts of appeals have applied the clear and convincing evidence standard in proceedings under Sec. 523, all but one of those decisions involved claims under Sec. 523(a)(2)--the exception for indebtedness arising from fraud.[2] As we have noted, in contrast to actions for malicious prosecution, common law actions for fraud have historically employed the heavier clear and convincing evidence burden of proof. See, e.g., Lalone v. United States, 164 U.S. 255, 257, 17 S.Ct. 74, 75, 41 L.Ed. 425 (1896) ("In all proceedings instituted ... on the ground of alleged fraud practiced by a defendant upon a plaintiff, the rule is of long standing and is of universal application, that the evidence tending to prove the fraud and upon which to found a verdict or decree must be clear and convincing."). Consequently, the fact that virtually all courts have adopted the clear and convincing standard in disputes under Sec. 523(a)(2) comports with our view that the appropriate burden of proof under Sec. 523 is the prevailing standard used by courts to resolve the types of claims underlying the particular exception at issue.
 
 
 11
 Only two courts of appeals have commented on the appropriate standard in cases under Sec. 523(a)(6). Of the two, one uses the clear and convincing standard, Chrysler Credit Corp. v. Rebhan, 842 F.2d 1257 (11th Cir.1988), and one adopts the preponderance of the evidence standard, Combs v. Richardson, 838 F.2d at 112. In Chrysler Credit, the required standard of proof was not at issue; the court simply observed, by way of dicta, that there was "no question but that the party seeking to except a debt from discharge [under Sec. 253(a)(6) ] must prove the willfulness and maliciousness of the act by clear and convincing evidence." 842 F.2d at 1262. In Combs, however, the issue was directly before the court and we find the court's analysis entirely convincing. See 838 F.2d at 116.
 
 
 12
 We therefore hold that creditors claiming a nondischargeable debt under Sec. 523(a)(6) must prove a malicious and willful injury inflicted by the debtor by a preponderance of the evidence.[3] Because Laganella and P.T. & L. bore the same burden in the malicious prosecution suit, the finding in that suit deserves preclusive effect in this case, assuming that no other exception to issue preclusion applies.
 
 B.
 
 13
 Braen claims that the state court in the malicious prosecution action defined malice more liberally than does Sec. 523(a)(6) and therefore that the prior litigation did not resolve whether Braen acted "willfully and maliciously" within the meaning of Sec. 523. Specifically, Braen contends that the state court's instructions to the jury permitted it to find him liable for malicious prosecution if it found he had acted only recklessly or negligently when he informed authorities that Laganella and P.T. & L. had rigged bids. Since, in contrast, creditors asserting a "malicious and willful injury" under Sec. 523(a)(6) must prove that the debtor intentionally inflicted the claimed injury,[4] Braen argues that the malicious prosecution decision was not based on a level of culpability that satisfies the nondischargeability standard.
 
 
 14
 We agree that collateral estoppel cannot preclude a debtor from contesting that he acted maliciously if the decision upon which the estoppel claim is predicated required only proof of negligence or recklessness. Consequently, the merit of this second contention depends on whether, as Braen claims, the judge in the malicious prosecution suit instructed the jury it could find Braen liable if it concluded he had been negligent or reckless. As on all occasions when we interpret jury instructions, we consider the totality of the instructions and not a particular sentence or paragraph in isolation. See, e.g., United States v. Piccolo, 835 F.2d 517, 520 (3rd Cir.1987).
 
 
 15
 Braen's contention that the state court permitted the jury to find malice based on only negligent conduct focuses on two separate portions of the jury instructions. He points first to the court's instructions on the element of lack of probable cause, according to which, "reasonable or probable cause is defined as a reasonable ground for suspicion supported by circumstances sufficient to warrant an ordinarily prudent man in believing that party is guilty of the offense. It must be more than an unfounded suspicion." App. at 231. We agree that, under this definition, plaintiffs could be found to have established a lack of probable cause without having established that Braen was more than negligent or reckless. Braen then points to a later remark by the trial judge that "[t]he element of malice may be inferred from a lack of reasonable ... probable cause." App. at 234. He reasons that if the lack of probable cause element could exist without Braen being more than negligent or reckless and the court told the jury that it could infer that he acted maliciously from the absence of probable cause, the jury may have found for the plaintiffs even though it believed Braen was no more than negligent or reckless.
 
 
 16
 We interpret these instructions differently. In the first place, the trial judge twice defined malicious motive as "the intentional doing of a wrongful or unlawful act without just cause or excuse." App. at 233, 236 (emphasis added). Secondly, the court's instructions made it clear that the malicious prosecution tort consisted of three distinct elements and that the plaintiff bore the burden of establishing each element by a preponderance of the evidence. The trial judge summarized the plaintiff's burden as follows:
 
 
 17
 So, the plaintiff in order to ... prevail ... must prove by a preponderance of the evidence that the defendant caused the criminal proceedings to be instituted against him. And also by a preponderance of the evidence, must prove that there was a lack of reasonable or probable cause for the criminal prosecution. Third, that the defendant or defendants were activated by malicious motive in proceeding with the criminal complaint.
 
 
 18
 App. at 234-35. Consistent with these instructions, the court then provided the jury with special interrogatories which separately addressed each of the elements of the tort. As to Braen, the jury answered the special interrogatories as follows:
 
 
 19
 1. Do you find the plaintiff has proved by a preponderance of the evidence that the named defendants acted to bring about or were responsible for the institution of [sic] underlying criminal proceeding against plaintiff?
 
 A. Yes
 
 20
 2. Do you find that plaintiff has proved by a preponderance of the evidence that there was a lack of reasonable or probable cause for the criminal prosecution?
 
 A. Yes
 
 21
 3. Do you find that the plaintiff has proved by a preponderance of the evidence that the defendant was activated by malicious motive in prosecuting the criminal complaint against the plaintiff.
 
 A. Yes
 
 22
 App. at 247-49. These instructions, taken as a whole, clearly required the jury to find that Braen acted intentionally and with an improper motive when he wrongly asserted that Laganella had rigged bids.
 
 
 23
 Nor is the trial judge's remark that the jury could infer malice from the lack of probable cause contrary to this conclusion. Braen asserts that the statement permitted the jury to equate malice with an absence of probable cause. As noted earlier, however, the trial court clearly defined (three times) lack of probable cause and malicious motive as separate elements with distinct requirements. Braen has not suggested, nor can we imagine, what function that careful distinction served if indeed the jury could find malice based solely on the lack of probable cause. In essence, Braen asks us to construe the court's instructions in a manner that renders useless all discussion of the malice requirement, a result contrary to our basic rules of construction. J.E. Fatlin Motor Transp. v. Eazor Express, 273 F.2d 444 (3d Cir.1959) ("It would not be good interpretation to disregard language ... as meaningless or absurd if that can be avoided."); see also Restatement (Second) of Contracts Sec. 236(a) (1979) ("An interpretation which gives a reasonable, lawful, and effective meaning to all manifestations of intention is preferred to an interpretation which leaves part of such manifestations unreasonable, unlawful, or of no effect.").
 
 
 24
 We therefore conclude that the most reasonable interpretation of the charge explaining the jury's ability to find malice based on inferences drawn from the evidence is that evidence establishing lack of probable cause may also support inferences that the defendant had acted intentionally with a malicious motive. We see nothing problematic with that suggestion. If the known facts fall so far short of probable cause that a person of common prudence would recognize its absence, one may infer that the defendant recognized its absence and intentionally went forward with an ulterior motive. Consequently, we conclude that the state court's instructions provide no basis for declining to apply the issue preclusion doctrine.
 
 C.
 
 25
 A central tenet of issue preclusion directs that collateral estoppel bars reconsideration of only those issues that the parties had a full and fair opportunity to litigate. Based on this principle, Braen argued before the bankruptcy court that the application of collateral estoppel to his case was not fair for two reasons: (1) he was too ill at the time of the malicious prosecution to rebut the plaintiff's charges, and (2) his attorney acted negligently by failing to examine important documents and neglecting to make potentially helpful arguments at trial. The bankruptcy court rejected Braen's request for a hearing on the grounds that such considerations should have been raised in the state court appeals process and were irrelevant to the application of collateral estoppel. On appeal, Braen convinced the district court that he at least deserved a hearing on the full and fair opportunity issue.
 
 
 26
 Subsection 28(5) of the Restatement (Second) of Judgments states as follows:
 
 
 27
 Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded [if] [t]here is a clear and convincing need for a new determination of the issue ... because the party sought to be precluded, as a result of the conduct of his adversary or other special circumstances, did not have an adequate opportunity or incentive to obtain a full and fair adjudication in the initial action.
 
 
 28
 Comment j to this section adds that an exception may be appropriate when "one of the parties may have been laboring under a mental or physical disability that impeded effective litigation and that since has been removed." The Restatement cautions, however, that the instances in which subsection (5) justifies an exception to preclusion "must be the rare exception, and litigation to establish an exception in a particular case should not be encouraged. Thus it is important to admit an exception only when the need for a redetermination of the issue is a compelling one." Restatement (Second) of Judgments Sec. 28(5) comment g (1980).
 
 
 29
 For purposes of this case, we may accept Braen's assertion that the Restatement's view is the appropriate one. See Blonder-Tongue Labs v. University of Illinois Foundation, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971). We conclude, however, that the evidence that Braen tendered to the bankruptcy court on this issue, even if accepted as true, would not satisfy the Restatement standard. Accordingly, Braen was not entitled to a hearing on this issue.[5]
 
 
 30
 Braen argued to the bankruptcy court that his lawyer in the state court proceeding provided deficient representation because he failed to discover and present at trial readily available evidence supporting Braen's side of the story.[6] The general rule is that "ignorance or carelessness of an attorney" does not provide a basis for relief from the effects of an adverse civil judgment. Cases abound in which petitions for relief from judgment under Rule 60(b) on this ground have been denied. See Blinder, Robinson & Co. v. United States, 748 F.2d 1415 (10th Cir.1984); Smith v. Bounds, 813 F.2d 1299, 1304 (4th Cir.1987), cert. denied, --- U.S. ----, 109 S.Ct. 176, 102 L.Ed.2d 146 (1988); Cline v. Hoogland, 518 F.2d 776 (8th Cir.1975); Bershad v. McDonough, 469 F.2d 1333, 1336-37 (7th Cir.1972); Greenspahn v. Joseph E. Seagram & Sons, 186 F.2d 616 (2nd Cir.1951).[7] The courts recognize that granting relief because a party "should not be penalized for the omissions of his own attorney would be visiting the sins of [that party's] lawyer upon the [opponent]." Link v. Wabash Railroad Co., 370 U.S. 626, 634 n. 10, 82 S.Ct. 1386, 1390 n. 10, 8 L.Ed.2d 734 (1962).
 
 
 31
 The only cases we have found in which a lawyer's defalcation has been held to warrant relief from the consequences of a judgment are cases in which the client was deprived of his day in court because his lawyer failed altogether to respond to a motion for a default judgment or a motion for summary judgment. E.g., Boughner v. Secretary of HEW, 572 F.2d 976 (3d Cir.1978); Augusta Fiberglass Coatings Inc. v. Fodor Contracting Corp., 843 F.2d 808 (4th Cir.1988). Here Braen clearly had a full and fair opportunity to litigate his case. The trial lasted for two weeks, and his attorney mounted a substantial defense. The case went to the jury and Braen lost. To now release him from the consequences of that loss because his attorney did not put forward all there was to tender would seriously undermine the doctrine of issue preclusion and impose an unjust burden on prevailing litigants and the legal system.
 
 
 32
 Turning to Braen's "poor health" argument, it is undisputed that Braen (1) knew throughout the state court proceedings that he faced the potential of a multimillion dollar judgment, (2) attended each day of the two week trial, (3) testified at length during that trial, and (4) did not assert "poor health" in support of his post-verdict arguments to the state trial and appellate courts that the trial violated due process. The transcript of his testimony demonstrates that he was alert and responsive to questioning on both direct and cross and that his memory was intact. App. at 571-657. There was thus compelling support before the bankruptcy court for the conclusion that Braen had the incentive and capacity to defend himself. The only medical evidence submitted by Braen in support of a contrary conclusion consisted of three letters from his physician, each dating from a period between five and seven and one-half years before trial, that describe his need for hemodialysis. None mention any symptoms that would impair his ability to participate meaningfully in his defense.
 
 
 33
 On this record, we conclude that the district court erred in overturning the bankruptcy court's denial of an evidentiary hearing.
 
 III.
 
 34
 The bankruptcy court did not err in holding that issue preclusion barred Braen from relitigating whether Laganella's judgment was a debt incurred "for willful and malicious injury by the debtor." 11 U.S.C. Sec. 523(a)(6). Accordingly, the district court's order of November 18, 1988 will be reversed and the case will be remanded with instructions that the bankruptcy court's order of June 21, 1988 be reinstated.
 
 
 
 [1]
 See Sec. 28(4) of the Restatement (Second) of Judgments (1980):
 Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded ... [if] the adversary [of the party sought to be precluded] has a significantly heavier burden than he had in the first action.
 Accord O'Shea v. Amoco Oil Co., 886 F.2d 584 (3d Cir.1989) (applying New Jersey law). See also Restatement (Second) of Judgments Sec. 28 comment f, illustration 10 (concluding that a clear and convincing standard is sufficiently heavier than a preponderance of the evidence standard to trigger Sec. 28).
 
 
 [2]
 The decisions involving claims under Sec. 523(a)(2) are: (1) In re Martin, 761 F.2d 1163 (6th Cir.1985); (2) In re Kimzey, 761 F.2d 421 (7th Cir.1985); (3) In re Van Horne, 823 F.2d 1285 (8th Cir.1987); (4) In re Garner, 881 F.2d 579 (8th Cir.1989); (5) Driggs v. Black, 787 F.2d 503 (10th Cir.1986); and (6) In re Dougherty, 84 B.R. 653 (9th Cir. BAP 1988)
 
 
 [3]
 The bankruptcy court reached this same result, but reasoned that it was required, under Butner v. United States, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979), to apply New Jersey's burden of proof. Butner held only that the bankruptcy code, as a general rule, left the definition of property rights to state law. The Court's opinion expressly notes that Congress has the power to reshape those rights in bankruptcy and has exercised that power to displace state law rights in several contexts. 440 U.S. at 54 & n. 8, 99 S.Ct. at 917 & n. 8. The nondischargeability provisions are one context in which it has done so. The exceptions to the general rule of dischargeability are federal substantive law; the procedures pursuant to which nondischargeability is established under Sec. 523(a)(6)--whether provided by statute or federal common law--are also matters of federal law
 
 
 [4]
 Collier explains the culpability standard under Sec. 523(a)(6):
 An injury to an entity or property may be a malicious injury within this provision if it was wrongful and without just cause or excuse, even in the absence of personal hatred, spite or ill-will. The word "willful" means "deliberate and intentional," a deliberate and intentional act which necessarily leads to injury. Therefore, a wrongful act done intentionally, which necessarily produces harm and is without just cause or excuse, may constitute a willful and malicious injury.
 
 
 [3]
 R. Babitt, A. Herzog & R. Levin, Collier on Bankruptcy p 523.16 (L. King 15th ed. 1989)
 
 
 [5]
 The district court suggested that our opinion in Matter of Ross, 602 F.2d 604 (3d Cir.1979), compelled the bankruptcy court to conduct an evidentiary hearing on Braen's fairness arguments. On the contrary, Ross's discussion concerning the desirability of a hearing in the context of that case pertained only to collateral estoppel's core requirements: "(1) the issue sought to be precluded must be the same as that involved in the prior action; (2) that issue must have been actually litigated; (3) it must have been determined by a valid and final judgment; and (4) the determination must have been essential to the prior judgment." Id. at 608 (quoting Haize v. Hanover Insurance Co., 536 F.2d 576, 579 (3d Cir.1976)). Ross does not suggest that an evidentiary hearing on the fairness of the prior proceeding should be held as a matter of course. Clearly, bankruptcy courts need not conduct such a hearing where, as here, the debtor's allegations, even if taken as true, would not justify an exception to the general rule of issue preclusion
 
 
 [6]
 Thus, Braen does not argue that there is newly discovered evidence that could not have been secured for trial with reasonable diligence
 
 
 [7]
 Though Braen attacks the earlier proceeding collaterally and not under Rule 60(b), similar considerations govern the two contexts. Neither Braen nor we found a single case in which the court denied a prior judgment preclusive effect based on lawyer defalcation. Though Braen contends that Ackerman v. Ackerman, 676 F.2d 898 (2d Cir.1982), supports his claim, in fact, that decision was based upon the widely-recognized exception that a subsequent court will not find issue preclusion where the losing party in the prior suit had no incentive to litigate the matter at issue in the subsequent suit