FILED

MAR 04 2013

SUSAN M SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY APPELLATE PANEL

OF THE NINTH CIRCUIT

| | | |
|---|---|---|
| In re: | ) | BAP No. 12-1330-JuKiD |
| | ) | |
| JOHN D. GESSIN, | ) | Bk. No. NV-11-51818 |
| | ) | |
| Debtor. | ) | Adv. No. NV-11-05078 |
| _____ | ) | |
| | ) | |
| JOHN D. GESSIN, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | M E M O R A N D U M[1] |
| | ) | |
| ALLISON TAITANO (MOORE), | ) | |
| | ) | |
| Appellee. | ) | |
| _____ | ) | |

Argued and Submitted on January 25, 2013
at Las Vegas, Nevada

Filed - March 4, 2013

Appeal from the United States Bankruptcy Court
for the District of Nevada

Honorable Bruce T. Beesley, Bankruptcy Judge, Presiding
_____

Appearances:     Shelly Traleen O'Neill, Esq. of Demetras &
                 O'Neill, appeared for appellant John D. Gessin;
                 Glade L. Hall, Esq. appeared for appellee Allison
                 Taitano Moore
                 _____

Before:   JURY, KIRSCHER and DUNN, Bankruptcy Judges.

_____

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

-1-

Appellee, Allison Taitano,[2] obtained a state court arbitration award and judgment against appellant, debtor, John Gessin, based on debtor's fraudulent misrepresentations, constructive fraud and conversion of her money. Afterwards, debtor filed a chapter 13[3] bankruptcy petition. Taitano commenced an adversary proceeding to have the state court judgment in the amount of $56,802.15 declared a nondischargeable debt because it was based on fraud. Taitano filed a motion for summary judgment (MSJ), which the bankruptcy court granted, finding the debt nondischargeable under § 523(a)(2) on the basis of issue preclusion. Debtor appeals from that order. We AFFIRM.

## I. FACTS[4]

Taitano met debtor on Match.com, an online dating service. Debtor's profile represented that he (1) was a successful businessman; (2) had a graduate degree; (3) owned and operated two businesses; (4) made $150,000 per year; (5) did extremely well in business; (6) did extremely well in finances; and (7) did extremely well in career stability. After Taitano and

---

[2] Taitano subsequently married and changed her name to Moore.

[3] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. "Rule" references are to the Federal Rules of Bankruptcy Procedure and "Civil Rule" references are to the Federal Rules of Civil Procedure.

[4] The underlying facts are taken mostly from the arbitrator's findings of fact set forth in the arbitrator's award and the state court's findings of fact set forth in its Findings of Fact, Conclusions of Law, and Judgment.

-2-

debtor began a dating relationship, debtor represented in person to her (1) that he was a successful stock market investor; (2) that he had a stock account with about $90,000 in securities; (3) that the stock account was in his father's name so that he could hide this asset from the mother of his son; and (4) that he could invest Taitano's money, which was currently in a Certificate of Deposit (CD), for a higher rate of return.

Taitano, who was a high school teacher, cashed out her CD in the amount of $29,949.72, added additional cash, and on January 14, 2009, gave $30,000 to debtor. Debtor later told Taitano that he had invested the cash in the stock market which was contrary to her express intentions, and that most of the funds had been lost. Taitano demanded an explanation for the loss of her money and requested the buy-sell tickets and brokerage statements. None were provided. Debtor then changed his story and asserted that he had not lost the money in the stock market, but rather had invested in a mobile home which had generated a promissory note in his favor.

In late February 2009, debtor delivered to Taitano for security for her $30,000 a mobile home title which was signed off by the owner, Kim E. Kaltenbrun, on April 2, 2007, and by Green Tree Servicing LLC fka Green Tree Acceptance on March 9, 2007. Debtor had sold the mobile home to Gene R. Aquino and Mary Ann D. Kang by a written agreement entered into on August 9, 2008. The sale was for $49,620.71 with a down payment of $10,000. Debtor was identified as the seller of the mobile home and was receiving monthly payments from the buyers.

On March 10, 2009, Taitano filed a civil complaint against

-3-

debtor in the Second Judicial District Court of the State of Nevada, Case No. CV09-00710, alleging fraud, breach of fiduciary duty, misuse of her funds and failure to account, conversion, and obtaining her funds through a false statement in writing in violation of Nev. Rev. Stat. § 205.375.[5]

On April 29, 2009, the state district court issued a prejudgment writ of attachment and garnishment after concluding that Taitano had a meritorious claim for relief and was likely to prevail on the merits of her claim.[6] The properties to be attached were the title to the mobile home and payments due from Aquino and Kang to any person, other than for taxes and insurance, under the contract of sale for the mobile home and lot lease agreement between Aquino and Kang on the one hand and debtor on the other. The value of the payments prior to the judgment were estimated to be $8,800.

The matter was sent to mandatory arbitration and originally scheduled for hearing on December 7, 2009. Debtor obtained a continuance, over Taitano's objection, to January 22, 2010, based on his claim that witnesses critical to his defense were unavailable.

---

[5] This statute states that by making a false statement in writing for the purpose of procuring property or credit one is guilty of a misdemeanor.

[6] The state district court later found that when the garnishment was served on the garnishees, Aquino and Kang, they falsely swore that they were not making any payments to debtor and did not owe any debt to him. The court also found debtor was in violation of the attachment because by filing false affidavits, a new title to the mobile home was issued in the names of Bernard Gessin and Kaltenbrun.

-4-

On January 5, 2010, debtor signed a substitution of counsel, substituting Mr. McKenna for Mr. Egghart. McKenna waited until January 15, 2010, to advise Taitano's counsel and the arbitrator that he was substituted in as debtor's attorney. McKenna then demanded that the arbitrator recuse himself because the arbitrator and McKenna were representing opposing parties in other litigation. Taitano opposed, but the arbitrator recused himself. During this time, McKenna made no effort to receive and hold the garnished mobile home payments. The record reflects that the payments were being made to debtor despite the garnishment and orders of the arbitrator[7] that debtor's attorneys hold those funds in their trust accounts.

A replacement arbitrator was appointed and the hearing scheduled for June 3, 2010, with briefing deadlines set. No briefs were filed on debtor's behalf. Debtor also failed to respond to Taitano's motion for an expedited hearing. The arbitrator ordered the filing of a pre-hearing statement. Debtor filed his statement consisting of twenty-three lines with virtually no discussion of the real issues in the case and no citations to any legal authority.[8]

The arbitration hearing took place on June 3, 2010. In support of her case, Taitano testified. Debtor testified as an adverse witness. Stacy Rissone testified after debtor.

---

[7] The Findings of Fact, Conclusions of Law and Judgment by the state district court reflects that the first arbitrator, Mr. Santos, had ordered Gessin's attorneys to hold the funds in their trust accounts.

[8] The pre-hearing statement is not part of the record on appeal.

Rissone, also an alleged victim of debtor's fraud, had delivered $25,000 to him based upon his representations that he could generate a profit for her from the purchase and sale of automobiles.

Debtor presented no testimony or exhibits in his defense and rested his case after the close of Taitano's case. Debtor also provided no explanation as to why the "key witnesses", whose alleged unavailability had caused the matter to be continued for six months, were not produced as promised.

On June 11, 2010, the arbitrator issued a written decision, finding for Taitano on her claims of fraud and conversion. The arbitrator also noted that debtor filed a verified counterclaim in the case on April 14, 2009, alleging causes of action for abuse of process, negligence, conversion, and attorneys' fees, but debtor presented no case, gave no evidence, and in fact, did not mention his counterclaim at all in the arbitration. The arbitrator found that the counterclaim was asserted for the improper purpose of harassing Taitano, causing needless delay, and increasing the cost of litigation to Taitano in violation of Nev. Rule Civ. Proc. 11(b) and debtor should be subject to sanctions under subsection (c) of the rule. The arbitrator also found that debtor lied under oath when he stated that he did not receive any cash from Ms. Taitano.

The arbitrator awarded Taitano $30,000 in general damages, $20,000 in punitive damages, and attorneys' fees in the amount of $3,000, with interest on the $30,000, and costs. The award further noted (1) that debtor should be found to be the owner of the mobile home subject to the contract of sale to Aquino and

-6-

Kang entered into August 9, 2008; (2) that debtor should be found to have delivered to Taitano the title to the mobile home as security for the $30,000; and (3) that the prejudgment writ of attachment and garnishment presently in effect should be continued in effect pending judgment and execution and resolution of how payments are to be made by Aquino and Kang.

On June 22, 2010, debtor filed a request for a trial de novo. Taitano filed a "Motion for Order to Strike Defendant's Request for Trial De Novo Pursuant to Nev. Arbitration Rule 22"[9] on the grounds that debtor failed to defend his case during the arbitration proceeding in good faith and had engaged in conduct designed to obstruct, delay or otherwise adversely affect the arbitration proceeding. Debtor's affidavit in response, which he apparently filed pro se, essentially blamed McKenna, his attorney, for debtor's failure to produce witnesses, testify or produce documents.

On October 12, 2010, the state district court held a hearing on the matter and took the matter under submission. On October 27, 2010, the state court entered detailed Findings of

_____

[9] This rule, entitled "Sanctions" provides:

(A) The failure of a party or an attorney to either prosecute or defend a case in good faith during the arbitration proceedings shall constitute a waiver of the right to a trial de novo.

(B) If, during the proceedings in the trial de novo, the district court determines that a party or attorney engaged in conduct designed to obstruct, delay or otherwise adversely affect the arbitration proceedings, it may impose, in its discretion, any sanction authorized by N.R.C.P. 11 or N.R.C.P. 37.

-7-

Fact, Conclusions of Law, and Judgment.  The state court incorporated the arbitrator's findings into its own.  In its conclusions of law, the state court found, among other things, that debtor failed to defend the case in good faith during the arbitration proceedings and therefore his failure to do so constituted a waiver of his right to a trial de novo.  Accordingly, the state court struck debtor's request for a trial de novo and entered judgment in favor of Taitano.

### The Bankruptcy Proceedings

On June 2, 2011, debtor filed his chapter 13 petition, which was later converted to one under chapter 7.[10]

On August 2, 2011, Taitano filed an adversary complaint seeking to have the state court judgment declared a nondischargeable debt based on fraud.

On February 21, 2012, Taitano filed her MSJ based on the state court judgment, the arbitrator's findings of fraud and the doctrine of issue preclusion.

---

[10] Debtor's chapter 13 case became subject to dismissal due to the fact that he did not appear at the continued § 341a meetings.  Debtor advised the chapter 13 trustee that he would consent to dismissal of his case.  The trustee filed a motion to dismiss based on unreasonable and prejudicial delay.  The trustee later supplemented his dismissal motion, suggesting that debtor's case be converted rather than dismissed on the ground that debtor's case was simply a continuation of his efforts to delay and/or completely avoid collection action related to the results of the state court litigation with Taitano and Rissone.  The trustee pointed out that debtor's schedules showed no regular income other than contributions from family members that coincidentally facilitated a budget just sufficient to repay debtor's administrative expenses and scheduled priority tax debts.  The bankruptcy court converted debtor's case to chapter 7 on October 25, 2011.

-8-

On March 19, 2012, attorney Zach Coughlin, filed a late opposition[11] on debtor's behalf. The opposition, of which we have taken judicial notice, covered a number of grounds. First, it addressed the role of Coughlin, who apparently was listed as the attorney of record in the adversary, but who was actually ghost writing debtor's pleadings. Coughlin sought to withdraw. Next, the opposition contained "points and authorities" under which numerous cases addressing breach of fiduciary duty under § 523(a)(4) were cited with little analysis or discussion. Third, debtor requested the bankruptcy court vacate the state court judgment based on his counsel's failure to "zealously advocate" debtor's position during the arbitration hearing, contending this was excusable neglect under Civil Rule 60(b) (incorporated by Rule 9024). Fourth, debtor asserted that the arbitrator had exceeded his jurisdiction because he ruled on real property matters. Fifth and last, debtor requested the judgment be vacated because of newly discovered evidence.[12]

---

[11] The actual title of the document was "Motion for Extension of Time to File Opposition to Motion for Summary Judgment for Dischargeability; or, Plead in the Alternative, Opposition to Motion for Summary Judgment and Motion to Withdraw as Counsel." We take judicial notice of debtor's opposition to Taitano's summary judgment and his supplement with attached exhibits which were docketed and imaged by the Bankruptcy Court in this case. Atwood v. Chase Manhattan Mortg. Co. (In re Atwood), 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

[12] This evidence consisted of numerous affidavits of individuals who worked with Christina Ho, debtor's ex-girlfriend and the mother of his son. Ho's co-workers declared that Ho had entered into a conspiracy with Taitano and Rissone to defraud debtor and ruin him financially. It does not appear that these affidavits were filed in the arbitration proceeding nor is there
(continued...)

On May 4, 2012, the bankruptcy court heard the MSJ, but the transcript reflects that no substantive arguments were made with respect to the motion. The bankruptcy court stated on the record that it would grant the MSJ based on the preclusive effect of the state court judgment. The court requested Taitano's counsel to file certified copies of the state court judgment and record and took the matter under submission.

On June 8, 2012, the bankruptcy court entered an order granting Taitano's MSJ on the grounds that the state court arbitrator's award established every element under § 523(a)(2) and thus the doctrine of issue preclusion prevented debtor from relitigating those elements in the bankruptcy court. Debtor timely appealed.

## II.   JURISDICTION

The bankruptcy court had jurisdiction over this proceeding under 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

## III.   ISSUE

Whether the bankruptcy court erred in deciding that the state court judgment was nondischargeable under § 523(a)(2) based on the doctrine of issue preclusion.

## IV.   STANDARD OF REVIEW

Since this case arises on summary judgment, the standard of review is de novo. Halverson v. Skagit Cty., 42 F.3d 1257, 1259 (9th Cir. 1994); Kelly v. Okoye (In re Kelly), 182 B.R. 255, 257

[12](...continued)
any indication that debtor moved to vacate the judgment in the state court with this newly discovered evidence.

-10-

(9th Cir. BAP 1995), aff'd, 100 F.3d 110 (9th Cir. 1996).

We also conduct a de novo review of the bankruptcy court's determination that issue preclusion is available. Lopez v. Emerg. Serv. Restoration, Inc. (In re Lopez), 367 B.R. 99, 103 (9th Cir. BAP 2007). Once we determine that issue preclusion is available, we review whether applying it was an abuse of discretion. Id. A bankruptcy court abuses its discretion when it applies the incorrect legal rule or its application of the correct legal rule is "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." United States v. Loew, 593 F.3d 1136, 1139 (9th Cir. 2010) (quoting United States v. Hinkson, 585 F.3d 1247, 1261–62 (9th Cir. 2009)(en banc))(internal quotation marks omitted).

The question whether a claim is dischargeable presents mixed issues of law and fact, which we also review de novo. Peklar v. Ikerd (In re Peklar), 260 F.3d 1035, 1037 (9th Cir. 2001).

## V. DISCUSSION

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In making this determination, conflicts are resolved by viewing all facts and reasonable inferences in the light most favorable to the non-moving party. United States v. Diebold, Inc., 369 U.S. 654,

-11-

655 (1962). "Issue preclusion is a proper basis for granting summary judgment." Bower v. Harrah's Laughlin, Inc., 215 P.3d 709, 720 (Nev. 2009).

The doctrine of issue preclusion applies to bankruptcy dischargeability proceedings. Grogan v. Garner, 498 U.S. 279, 284 (1991). Taitano had the burden of proving that the elements for issue preclusion were met. In re Kelly, 182 B.R. at 258. To sustain this burden, Taitano must have introduced "a record sufficient to reveal the controlling facts and pinpoint the exact issues litigated in the prior action. Any reasonable doubt as to what was decided by a prior judgment should be resolved against allowing the [issue preclusion] effect." Id.

Whether the state court arbitration award, which was incorporated into the state court judgment, has preclusive effect is determined under Nevada law. See Gayden v. Nourbakhsh (In re Nourbakhsh), 67 F.3d 798, 800 (9th Cir. 1995). The Nevada Supreme Court has held that the doctrine of issue preclusion applies to arbitration awards. Int'l Assn. of Firefighters, Local 1285 v. City of Las Vegas, 823 P.2d 877, 880 (Nev. 1991); see also Khaligh v. Hadaegh (In re Khaligh), 338 B.R. 817, 823 (9th Cir. BAP 2006) ("Since the confirmation of a private arbitration award by a state court has the status of a judgment, federal courts must, as a matter of full faith and credit, afford the confirmation the same preclusive consequences as would occur in state court."), aff'd, 506 F.3d 956 (9th Cir. 2007).

In Nevada, the elements necessary for application of issue preclusion are: (1) the issues must be identical; (2) the

-12-

initial ruling must be final and on the merits; (3) the party against whom the judgment is asserted must be a party or be in privity with a party in the prior case; and (4) the issue must have been actually and necessarily litigated. Howard v. Sandoval (In re Sandoval), 232 P.3d 422, 423 (Nev. 2010) (citing Five Star Capital v. Ruby, 194 P.3d 709, 713 (Nev. 2008)).

At the outset, we observe that the record shows the second and third elements of issue preclusion have been met: the state court judgment is final and was on the merits, and the parties are the same. Debtor does not challenge these requirements on appeal.[13]

**A.   Issue Preclusion:  The Actually Litigated Requirement**

Debtor contends first that the outcome of this case depends upon whether his alleged fraudulent conduct was "actually and necessarily litigated" in the prior state court action.  Debtor argues that the issues regarding his fraud do not meet the actually litigated requirement because he had incompetent counsel and thus relevant evidence was not considered; i.e., he presented no testimony,[14] documents or other evidence, in spite of his willingness and preparations to do so.  Due to the incompetence of his attorney, debtor argues, he did not present a defense in the state court arbitration.  He thus maintains that the judgment obtained by Taitano was akin to a default judgment and, generally, default judgments are not entitled to

---

[13] These arguments have been waived.  Smith v. Marsh, 194 F.3d 1045, 1052 (9th Cir. 1999).

[14] This assertion is not accurate.  The record reflects that he was called as an adverse witness and testified.

-13-

preclusive effect. Debtor further asserts that application of issue preclusion under these circumstances would be unfair.

Debtor's arguments that the state court proceeding was akin to a default proceeding are neither supported by the record nor does the state court judgment resemble the type of default judgment which is not entitled to issue preclusion under Nevada law. In Nevada, default judgments are generally not given preclusion effect. In re Sandoval, 232 P.3d 422. There, a default judgment was entered against Sandoval based on his failure to answer. The Nevada Supreme Court found that there was no evidence that Sandoval had knowledge of the case before the default judgment against him was entered, he entered no appearance and did not participate in any manner in the prior case, and the judgment did not make any specific findings of fact that were established through evidence. Under these circumstances, the court held that the issues were not actually and necessarily litigated and thus issue preclusion did not apply. Id. at 425.

The facts in this case are not even close to those in Sandoval. Here, debtor substantially participated in the state court lawsuit and arbitration proceeding by filing a counterclaim, requesting continuances of the arbitration hearing and filing a pre-hearing statement. Debtor was deposed. He also appeared at the arbitration hearing with his counsel, who cross-examined Taitano and her witnesses and objected to evidence. After the arbitrator's award was issued, debtor moved for a trial de novo, filed an affidavit regarding his attorney's alleged incompetence, and his attorney appeared at the hearing

-14-

when the state court denied his motion. The state court's ruling on the trial de novo indicated that it denied debtor's motion because debtor failed to defend his case in good faith during the arbitration proceedings. On these facts, the state court judgment is not akin to a default judgment. Therefore, unless debtor gains some traction from his attorney malpractice assertions, the actually and necessarily litigated prong is met.

The Nevada Supreme Court has not directly addressed the issue of whether the inadequate presentation of evidence or attorney malpractice during the first case prevents the judgment from being given preclusive effect in the second case. Absent a controlling state court decision, we predict how the highest state court would decide the issue. Sec. Pac. Nat'l Bank v. Kirkland (In re Kirkland), 915 F.2d 1236, 1239 (9th Cir. 1990). Addressing an argument similar to the one debtor makes here, the Third Circuit held that a plaintiff was precluded from raising an issue in a second action where the plaintiff alleged that his attorney's failure to discover and present readily available evidence had caused his defeat on that issue in the first action. Laganella v. Braen (In re Braen), 900 F.2d 621 (3rd Cir. 1990), cert. denied, 498 U.S. 1066 (1991), abrogated on other grounds by Graham v. I.R.S. (In re Graham), 973 F.2d 1089, 1099–1101 (3rd Cir. 1992).

In Braen, the plaintiff argued that his attorney acted negligently by failing to examine important documents and to make potentially helpful arguments at trial, thus causing him to lose on the issue of whether he had acted with malice in prosecuting a criminal complaint. 900 F.2d at 628. Noting "the

-15-

general rule . . . that 'ignorance or carelessness of an attorney' does not provide a basis for relief from the effects of an adverse civil judgment []", the court held that the fact that the attorney did not "put forward all there was to tender" did not defeat issue preclusion. <u>Id.</u> at 629.

The court further observed: "The only cases we have found in which a lawyer's defalcation has been held to warrant relief from the consequences of a judgment are cases in which the client was deprived of his day in court because his lawyer failed altogether to respond to a motion for default judgment or a motion for summary judgment . . . . Braen clearly had a full and fair opportunity to litigate his case. The trial lasted for two weeks, and his attorney mounted a substantial defense." <u>Id.</u>

Using similar reasoning, numerous other courts are in accord. <u>See</u> <u>Ballard Condo. Owners Ass'n v. Gen. Sec. Indem. Co. of AZ</u>, 2010 WL 4683721 (W.D. Wash. 2010) (finding that "[t]he concept of injustice does not apply simply because plaintiff would like to reargue the issue in a case where counsel's procedural error resulted in an adverse ruling. . . . Plaintiff had a full and fair opportunity to litigate the issue . . . and counsel's procedural errors do not work to create an injustice."); <u>In re Williams</u>, 282 B.R. 267, 277 (Bankr. N.D. Ga. 2002) (attorney's malpractice is not a per se denial of a full and fair opportunity to litigate; inquiry is whether party had adequate notice of the issue and was afforded the opportunity to participate in its determination); <u>In the Matter of Victor Distrib. Co.</u>, 11 B.R. 242, 246 n.3 (Bankr. E.D. Va. 1981) ("It is sufficient that the status of the suit is such that the

-16-

parties might have had their suit disposed of on the merits if they had presented all their evidence, and the court had properly understood the facts, and correctly applied the law to the facts.").

On the basis of the foregoing authority, we predict that the Nevada Supreme Court would follow the reasoning in Braen and find that debtor's claim of attorney incompetence would not defeat issue preclusion under the facts of this case.[15] Moreover, debtor never sought any relief in the state court based on his claim of attorney incompetence if the record there would have established incompetence, as opposed to considered strategy. See Pellegrini v. State, 34 P.3d 519, 534 (Nev. 2001) (proper procedure when attempting to claim ineffective assistance of counsel is by post-trial motions in the underlying case). Therefore, we conclude that the actually and necessarily litigated requirement was met.

**B.    Justifiable Reliance and § 523(a)(2)(A)**

The arbitrator found that all the elements for fraud under

---

[15] In any event, we have only debtor's conclusory allegation that his attorney was incompetent before us. There is nothing in the record that shows debtor's counsel's representation fell below an objective standard of reasonableness. Indeed, after noting that debtor lied under oath when he stated he did not receive any cash from Taitano, the arbitrator found:

> [T]his finding is not intended to suggest that Mr. Gessin's present counsel had aided or abetted or assisted Mr. Gessin's lying under oath; Mr. Gessin's present counsel did a very competent and professional job with a very skillful job of cross-examination of witnesses, general conduct of the case he had to work with, appropriate objections, and skilled argument . . . .

-17-

Nevada law had been met, including that Taitano had "justifiably relied upon Mr. Gessin's false representation of material facts." Debtor argues that there is no basis for the arbitrator's factual finding regarding Taitano's justifiable reliance upon debtor's representations and thus the finding is clearly erroneous.

According to debtor, the underlying facts do not show justifiable reliance. He contends that within one week of meeting him, a total stranger on a dating website, Taitano cashed out her CD in the amount of approximately $30,000 and gave it to him in cash, in a shoe box. Debtor points out that Taitano is an educated adult, not young, and a teacher with access to information and technologies. Given these facts, debtor argues, "[h]er reliance on statements made by a man on a dating website without garnering additional information before entrusting significant funds to a stranger, is absurd." Debtor also contends that since justifiable reliance is a factual issue, it cannot be subject to summary judgment.

This latter argument is misplaced. The bankruptcy court's decision on summary judgment was based on the doctrine of issue preclusion. Under element one of that doctrine, the question is whether the identical issue was decided in the previous action, not whether there was a factual dispute erroneously decided. The erroneously decided issue is one for appeal in the state court. Here, we conclude that the identical issue of justifiable reliance was decided in the arbitration proceeding. Justifiable reliance is an element of fraud under Nevada law and for purposes of nondischargeability based on fraud under

-18-

§ 523(a)(2)(A). See Lubbe v. Barba, 540 P.2d 115, 117 (Nev. 1975) (stating that plaintiff has burden of proving five elements for fraud, including justifiable reliance upon the misrepresentation); Apte v. Japra, M.D., F.A.C.C., Inc. (In re Apte), 96 F.3d 1319, 1332 (9th Cir. 1996) (noting that although the statute does not state what degree of reliance is necessary for application of § 523(a)(2)(A), the creditor's reliance need be only justifiable, not reasonable).[16]

Under Nevada law, the justifiable reliance requirement does not impose on a party any duty to investigate absent facts that should alert him that his reliance is unreasonable. Collins v. Burns, 741 P.2d 819, 821 (Nev. 1987). "The test is whether the recipient has information which would serve as a danger signal and a red light to any normal person of his intelligence and experience." Id. The Nevada Supreme Court further noted:

> [A] person guilty of fraud should not be permitted to use the law as his shield, 'when the choice is between the two - fraud and negligence - negligence is less objectionable than fraud. Though one should not be inattentive to one's business affairs, the law should not permit an inattentive person to suffer loss at the hands of a misrepresenter. Id.

Likewise, for purposes of § 523(a)(2)(A):

> [A] person is justified in relying on a representation of fact 'although he might have ascertained the falsity of the representation had he made an investigation.' Although one cannot close his eyes and blindly rely, mere negligence in failing to discover an intentional misrepresentation is no defense to fraud.

In re Apte, 96 F.3d at 1322.

---

[16] Debtor does not challenge the other elements for fraud which are the same under Nevada law and § 523(a)(2)(A).

-19-

During the course of the arbitration, the elements to establish fraud, including that of justifiable reliance, were squarely before the arbitrator. From the beginning, the arbitrator cautioned the parties that his impression from the file, including their pre-hearing statements, was that witness credibility might be an important factor in the case. The arbitrator, after hearing testimony, found Taitano's testimony to be credible and ultimately concluded that the justifiable reliance requirement had been met. The arbitrator was fully aware of how the parties met, Taitano's education, her age and her occupation. In contrast, the arbitrator found debtor lied under oath and that he was a "remarkably skilled prevaricator". We conclude that issue preclusion is especially appropriate in this case on the factual issue of justifiable reliance — the dispute essentially boiled down to a battle of credibility.

Further, the arbitrator found Taitano proved the elements of fraud, including justifiable reliance, by clear and convincing evidence. See Albert H. Wohlers & Co. v. Bartgis, 969 P.2d 949, 957 (Nev. 1998). As explained in Grogan v. Garner, the clear and convincing standard is a higher standard of proof than the preponderance of the evidence standard, and where the issues were subject to an equal or greater standard of proof in the prior litigation, those issues are eligible for issue preclusion in the subsequent litigation if the other elements for issue preclusion are met. 498 U.S. 279, 284-85 (1991).

In sum, because the factual issue of justifiable reliance was decided by the arbitrator, there were no issues of material

fact remaining to be tried in the adversary proceeding on this issue. Therefore, Taitano was entitled to judgment as a matter of law.

**C.   Discretion**

Having concluded that issue preclusion was available because all of the doctrine's requirements were met, we consider next whether the bankruptcy court properly exercised its discretion to apply it. "The discretionary aspect of issue preclusion is settled as a matter of federal law." In re Lopez, 367 B.R. at 107-08. Nevada law is in accord, holding that once it is determined that issue preclusion is available, the actual decision to apply it is left to the discretion of the "tribunal in which it is invoked." Redrock Valley Ranch v. Washoe Cnty., 254 P.3d 641, 646-47 (Nev. 2011). The doctrine of issue preclusion is grounded in considerations of basic fairness to the litigants. In re Sandoval, 232 P.3d at 424-25.

The bankruptcy court observed in its findings of fact that the state court judgment found debtor guilty of "specific and detailed procedural abuse and fraud on the court in delaying and burdening the process and in avoiding the court's prejudgment attachment. It characterizes Mr. Gessin as a 'remarkably skilled prevaricator,' and finds he committed perjury during his testimony in the arbitration hearing."

The bankruptcy court's findings belie any suggestion that debtor was a victim of the arbitration procedures themselves or of his allegedly incompetent attorney. There are no militating factors in the record that we could find which would cut in favor of not applying the doctrine of issue preclusion under

-21-

these circumstances. In fact, the record suggests that denying preclusive effect to the state court judgment would permit debtor to further delay the proceedings and perhaps ultimately avoid payment of the debt by deliberate abuse of the judicial process. As a result, the policies behind the application of issue preclusion — "conserving judicial resources, [] maintaining consistency, and [] avoiding oppression or harassment of the adverse party" — remain compelling. In re Sandoval, 232 P.3d at 425. Accordingly, we discern no abuse of discretion in the bankruptcy court's application of issue preclusion to the state court judgment.

## VI. CONCLUSION

For the reasons stated, we AFFIRM.